(100 South. 301)

No. 25743.

## BOWERS v. LANGSTON et al.

(Nov. 5, 1923. Rehearing Denied by the Whole Court May 14, 1924.)

*(Syllabus by Editorial Staff.)*

1. Estoppel ⬅91 (2)—Heir cannot rescind after receiving and disposing of share.

Where heir had received and disposed of share of estate allotted to her in partition in which she was represented by one without authority, she could not rescind unless for lesion.

2. Partition ⬅107—Partition proceedings held not null or subject to rescission for lesion.

Where heir on partition of property of an estate suffered injury to extent of only one-sixth of her full share, because informally adopted child had been allowed to participate, error *held* not to render the partition radically null, or subject to rescission for lesion, there not having been a lesion beyond one-fourth, in view of Civ. Code, art. 1861.

3. Adverse possession ⬅81—Prescription; unauthorized deed held sufficient to support prescription acquirendi causa.

Deed translative of property signed in good faith by one not having authority to do so *held* sufficient on which to base a plea of prescription acquirendi causa, in view of Civ. Code, arts. 3478, 3484, 3485.

Appeal from Third Judicial District Court, Parish of Claiborne; J. E. Reynolds, Judge.

Suit by Mrs. Mattie Bowers against Len Langston and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Edwin C. Henning, of Evansville, Ind., and Donelson Caffery, John F. Phillips, James L. Dormon, and J. E. Harrington, all of Shreveport (Oliver O. Provosty, of New Orleans, and Julius T. Long, of Shreveport, of counsel), for appellant.

Palmer & Hardin, Blanchard, Goldstein & Walker, T. M. Milling, Hampden Story, Wallace, Lyons & Wallace, and Thigpen, Herold & Lee, all of Shreveport, for appellees.

By Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.

ST. PAUL, J.  At the time of their death George Shaw and Eliza Shaw, his wife, had six children, to wit: (1) *W. G. Shaw*; (2) Amos Shaw (deceased), the father of plaintiff; (3) G. W. Shaw, Sr.; (4) T. E. Shaw; (5) J. B. Shaw; and (6) Mrs. R. F. Simms.

They had also informally "adopted" and received into their family, as a son, one G. W. Shaw, Jr., a remote kinsman, who, though never *formally* and legally adopted, yet "grew up in the family and was treated as a member thereof." Tr. 111.

After the death of George and Eliza Shaw, to wit, on March 9, 1892, G. W. Shaw, Sr., T. E. Shaw, J. B. Shaw, Mrs. R. F. Simms, and plaintiff (representing the interest of her deceased father Amos Shaw) sold to *W. G. Shaw* and G. W. Shaw, Jr., "all of the lands belonging to the estate and succession of said George Shaw, and Eliza Shaw, deceased," to wit, a certain tract of land in Claiborne parish, comprising (say) 800 acres, and formerly called "the George Shaw Home Place."  Tr. 3, 4, 13, 119.

Some time thereafter (but prior to January 24, 1893) *W. G. Shaw* and G. W. Shaw, Jr., acquired from Beulah Lodge (Tr. 124) a certain tract of land afterwards known as the "Bonnie Thomas Property," being the same property which R. B. (Bonnie) Thomas acquired from Geo. W. Shaw, Sr., on March 15, 1904 (Tr. 128); who had acquired the same from plaintiff herein on January 9, 1896 (Tr. 126), and which plaintiff had acquired from Geo. W. Shaw, Jr., and the heirs of *W. G. Shaw*, on January 24, 1893 (Tr. 124).

At this point, it may be mentioned that apparently Bonnie Thomas claimed some sort of *"equity"* in this last-named property as late (or as early) as December 8, 1894; but so far as this transcript shows he never at any time had any *title* thereto until 1904, as aforesaid, and so *that* may be dismissed, even if it had any bearing on this controversy (McDuffie v. Walker, 125 La. 152, 51 South. 100), which we do not think it has.

It also appears from the testimony of G. W. Shaw, Sr., and from the deeds at pages 13 and 131 of the transcript, that *W. G. Shaw*, and G. W. Shaw, Jr., owned other lands in common at the time of the death of *W. G. Shaw*, and at page 138 of the transcript appears a deed which shows that W. G. Shaw and G. W. Shaw, Jr., had purchased still another piece of land in common, which also figures in the settlement of the succession of *W. G. Shaw*.

### I.

On January 24, 1893, the following deed was duly executed and recorded:

"We the undersigned heirs and legal representatives of Wm. G. Shaw, deceased, do hereby sell, transfer and deliver all our right, title and interest in and to the following described tracts of real estate, situated in Claiborne parish, to wit:

"The George Shaw home place, 800 acres, more or less, with improvements thereon, as recorded.  * * *

"The T. B. Neal place.  * * *

"The A. McGranie place.  * * *

"The Callie Ashby place.  * * *

"This transfer is made to Geo. W. Shaw, Jr., who owns already an undivided half interest in same.  * * *

"This sale is made for an equal interest to us transferred by said Geo. W. Shaw, Jr.

"[Signed]              G. W. Shaw, Sen.
              "M. & B. P. Bowers.
              "T. E. Shaw.
              "Fannie Simms.
              "(R. F. Sims.)
              "J. B. Shaw."

### II.

On the same day, to wit, January 24, 1893, the following deed was also executed:

"Know all men by these presents that we, J. B. Shaw, G. W. Shaw, Senior, T. E. Shaw, Francis Simms, wife of R. F. Simms, aided and authorized herein by her husband, being the heirs of W. G. Shaw, deceased, and G. W. Shaw, Jr., have and do by these presents grant, bargain, sell, convey and deliver unto Mrs. Mattie Bowers the following described lands and all improvements thereon, to wit: "[Then fol-

lows a description of the land referred to in argument, brief and testimony, as the "Bonnie Thomas property" but] being the same lands described in deed from Beulah Hodge to W. G. and G. W. Shaw, as shown by record, etc. [The price stated is $668.33 cash.]"

This is the same land, which as heretofore said Mattie Bowers sold to G. W. Shaw, Sr., in 1896, and which the latter sold to R. B. (Bonnie) Thomas in 1904.

### III.

At the time those two deeds were executed G. W. Shaw, Sr., had a letter from plaintiff giving him authority in general terms to act for her in the settlement of the Succession of W. G. Shaw, and send her the proceeds. She claims that she did not know that there was any real estate dependent thereon, but in view of the fact that she herself received as part of her share a piece of real estate, which she afterwards sold, as above said, we confess that her testimony in that respect does not impress us.

Be that as it may, a power of attorney to sell real estate or dispose of an interest in a succession must be express and special (C. C. 2992, 2997), and for the purpose of this case it may be assumed that Shaw, Sr., held no such power of attorney from plaintiff.

On the other hand, it is shown by the evidence of Shaw, Sr., that the settlement of the succession was effected by allotting to each heir an equal share partly in personal property and partly in real estate, the other heirs making title thereto; and he is corroborated by the several deeds to be found in the transcript, particularly the recitals in the deed to G. W. Shaw, Sr., to be found at page 133 of the transcript and in the deed of ratification given by plaintiff to said Shaw, Sr., to be found at page 136 of the transcript.

So that, if none but heirs in fact had been admitted to take part and receive shares in the settlement, we might here and now close the chapter upon plaintiff's claim; for it is quite certain that she could not be allowed to receive and dispose of her full share in the succession and then return to reclaim a share in what was given to her coheirs.

### IV.

It is shown, however, that in addition to the five heirs of *W. G. Shaw* (to wit, G. W. Shaw, Sr., J. B. Shaw, T. E. Shaw, Mrs. Simms, and the plaintiff) G. W. Shaw, Jr., the so-called "adopted" son, was also admitted to a share in the succession with the full knowedge and consent of all the heirs present; but plaintiff is not shown to have had any knowledge of this fact, she being then absent.

On the other hand, it is quite apparent from what was done that the partition which took place was not only a settlement between the heirs of W. G. Shaw, but also between these last and G. W. Shaw, Jr., who had a half interest in all the lands, independently of the succession of W. G. Shaw.

So that G. W. Shaw, Jr., was properly a party to any partition of the lands held in common by the heirs of W. G. Shaw and himself and in any such partition was entitled to one-half in his own right. Thus the property should have been given five-tenths to G. W. Shaw, Jr., and one-tenth to each of the others. But, when he was admitted as a sixth heir, he actually received from the lands seven-twelfths, and each heir received only one-twelfth instead of one-tenth.

Plaintiff therefore suffered injury by this partition to the extent of the difference between one-tenth and one-twelfth; that is to say, to the extent of one-sixtieth of the whole, being the difference between five-sixtieths which she did receive and six-sixtieths which she should have received.

And yet, although injured only to the extent of one-sixtieth, she is claiming just six times that interest in the land, to wit, a

whole tenth. So that in any event her claim is wholly without merit beyond one-sixtieth of the property.

## V.

[1, 2] As we have said before, plaintiff by receiving and disposing of her share in the estate, has so far ratified the settlement thereof that she cannot claim a rescission thereof unless for lesion. But the Code does not allow the rescission of a partition for lesion unless beyond one-fourth. C. C. art. 1861. And the lesion which plaintiff has suffered in this case is less than that, for as aforesaid it is the difference between the six-sixtieths which she should have received and the five-sixtieths which she actually did receive. So that she received only five-sixths of what she should have received; in other words she suffered lesion to the extent of one-sixth of her share.

Bearing in mind, therefore, that G. W. Shaw, Jr., by reason of his half interest in the land, was not only a proper but even a necessary party to the partition thereof, we have here a partition between co-owners, in which one of them has suffered lesion not exceeding one-fourth. But such an error does not render the partition radically null (Barbarich v. Meyer, 154 La. 325, 97 South. 459; Metropolitan Bank v. Times-Democrat Publishing Co., 121 La. 547, 46 South. 622; Bayhi v. Bayhi, 35 La. Ann. 527), and does not give cause for rescission, because it does not exceed one-fourth (C. C. art. 1861).

Therefore even as between the parties thereto plaintiff has no cause for rescission of the settlement. But since the law and the courts look at the substance of claims put forward by litigants, and not alone at their form (Dawson v. Ohio Oil Co., 153 La. 657, 96 South. 508), it follows that this court will look beyond the form which plaintiff has chosen to give to her action (petitory) and see that she is in effect seeking to rescind a partition, made by one purporting to act for

her, and actually ratified by her as we have said. This she cannot do, because the lesion she suffered did not exceed one-fourth of her share.

## VI.

Having disposed of this case on the merits, it hardly behooves us to consider the plea of prescription acquirendi causa herein filed by defendants, to wit, 10 years' possession under a title translative of property and in good faith. But since, under the constitutional mandate, the decisions of one division of the court go on rehearing to some other division for final action, we deem it proper that this division, which heard the argument, should assign all the reasons on which its decision is based.

That Geo. W. Shaw, Jr., and his successors in title have been in possession of the land under the deed herein first set out in full, from the date of that deed until the filing of this suit (a period of nearly 30 years) is not disputed.

And the deed on its face purports to convey the property.

The evidence satisfies us that G. W. Shaw, Jr., believed in good faith that the children of his foster parents were satisfied to allow him a share in the succession of their brother; there was not the least occasion for him to think otherwise, since they actually allowed him that share; and for 29 years never as much as whispered any complaint about it. In fact none are complaining even now except this one plaintiff.

The district judge says:

"G. W. Shaw, Senior, in perfect good faith, acting upon the contents of a letter, signed a deed, translative of property to G. W. Shaw, Jr. * * *"

[3] The fact that G. W. Shaw, Sr., may not have had authority to sign such a deed does not deprive that deed of its character of a "just title"; i. e., a deed apparently transferring the ownership of the property. C. C. 3478, 3484, 3485.

In Greening v. Natalie Oil Co., 152 La. 467, 475, 93 South. 682, 685, it was held conclusively settled that—

"A sale of immovable property, followed by tradition, by a person styling himself the attorney in fact of the owner, but whose power of attorney is not produced is only defective for want of the evidence of his authority, and not for a nullity of form resulting from his legal incapacity."

And again:

"Where one takes upon himself, as the attorney in fact of another, to sell and deliver possession, his deed may form the basis of prescription, because the defect consists in the want of evidence of the mandate, and is not a nullity of form resulting from the incapacity of the vendor." Citing: Bedford v. Urquhart, 8 La. 241; Reeves v Towles, 10 La. 276, 284; Hall v. Mooring, 27 La. Ann. 596; Giddens v. Mobley, 37 La. Ann. 417; Dufour v. Camfranc, 11 Mart. (O. S.) 714.

To which may be added the following holding substantially the same, to wit: Buhols v. Boudousquie, 6 Mart. (N. S.) 153; Moore v. Hampton, 3 La. Ann. 192; Delabigarre v. Second Municipality, 3 La. Ann. 239; Johnson v. Carrere, 45 La. Ann. 847, 13 South. 195; Westerfield v. Cohen, 130 La. 533, 58 South. 175.

### Decree.

The judgment appealed from is therefore affirmed.

Rehearing refused by the WHOLE COURT.