### STATE ex rel. MUSLOW v. LOUISIANA OIL REFINING CORPORATION.

#### No. 5467.

Court of Appeal of Louisiana. Second Circuit.

June 1, 1937.

Rehearing Denied June 30, 1937.

Writ of Certiorari and Review Denied Nov. 2, 1937.

Blanchard, Goldstein, Walker & O'Quin and Robert Roberts, Jr., all of Shreveport, for appellant.

John B. Files, of Shreveport, for appellee.

TALIAFERRO, Judge.

The constitutional integrity of Act No. 64 of 1934 is squarely put at issue in this case. The act was upheld by the lower court and defendant has appealed.

Arthur C. Best and Sherman G. Spurr, on April 28, 1927, purchased from the Ackerman Oil Company by warranty deed several tracts of land in Caddo parish, including that of 37.50 acres described in plaintiff's petition. This deed expresses a price of "one dollar and other good and valuable consideration" received by the grantor. It is executed on behalf of the corporation by Paul Mlodzik, president, and by Jerome C. Dretzka, secretary. It is verified by the joint affidavit of these two officers who therein declare that they acted "by its (the Company's) authority." Several nonproducing oil wells were on the tract on February 17, 1933, and the casing therefrom, owned by the plaintiff, was sold by Best and Spurr. However, on that date plaintiff procured their consent in writing to temporarily leave the casing in one of the wells to the end that he might make further tests to ascertain if profitable production could be had.

An informal written contract of lease to evidence the agreement was signed by them and placed on record. It is stipulated therein that plaintiff should receive seven-eighths of production, if any, and Best and Spurr one-eighth thereof. The effort was in a measure successful. Oil was produced. The output was sold to the defendant and piped by plainitff into its carrier lines. The first run was made in September, 1933, and the last in August, 1934. The net amount due therefor and for which plaintiff sues is $445.55. Payment of this amount was refused on demand. Judgment was rendered therefor. As is authorized by the 1934 act, an alternative writ of mandamus was sued out.

Defendant excepted to the petition on the ground that it did not disclose a cause or right of action, and by formal plea attacked the 1934 act as being unconstitutional, void, and of no effect, in the following language: "The said statute, if enforced in this cause, in the manner relied upon by relator, would require respondent to pay to relator the value of property which did not belong and never has belonged to plaintiff, thereby leaving respondent responsible and liable to the true owner of said property for the value thereof, and in that manner depriving respondent of its property without due process of law, and denying to it the equal protection of the laws contrary to the provisions and requirements of the Constitutions of the United States and of the State of Louisiana."

The exception and plea were tried with the merits. Defendant denies that plaintiff has a valid lease of said land and denies that he ever has been the owner of the

crude oil produced therefrom. It denies also that the deed to Best and Spurr is translative of property for two reasons, viz.: (1) That no serious consideration is therein expressed; and (2) that the officers of the Ackerman Oil Company who signed said deed are not alleged either in the deed or the petition to have been authorized by the corporation to execute the deed. It also avers that, in keeping with the uniform rule and practice of oil companies, its own counsel examined the abstract of title to said 37.50-acre tract and made criticism thereof and recommended that certain information be procured and curative work done in order to put said title in condition to be favorably passed, all of which were made known to plaintiff; and that none of these suggestions and recommendations were complied with and for this reason the price of the oil was withheld from plaintiff.

█ Subsequent to filing this suit, the Louisiana Oil Refining Company availing itself of the benefits of section 77B of the United States Bankruptcy Act (U.S.Code, title 11, § 207 [11 U.S.C.A. § 207]), for the purpose of reorganization, etc., surrendered all its property, assets, and affairs to the United States District Court for the Western District of Louisiana and thereafter all of such property and assets were purchased and its liabilities assumed by the Arkansas Fuel Oil Company. This purchaser was substituted as defendant and the judgment herein rendered is against it.

Section 1 of Act No. 64 of 1934 declares, inter alia, that it shall be unlawful for any person, firm, or corporation, or officer thereof, when such person, firm, or corporation has purchased oil, gas, or other minerals from the lessee in a mineral lease, holding under any instrument sufficient in terms to transfer title to the leased property or the mineral rights described therein, to withhold payment of the price of such purchase. Section 2 of the act, so far as is pertinent to the present discussion, reads: "That any person, firm or corporation that has actually drilled or opened on any land in this State, under a mineral lease granted by the last record owner, as aforesaid, of such land or of the minerals therein or thereunder if 'the mineral rights in and to said land have been alienated, who holds under an instrument sufficient in terms to transfer the title to such real property, any well or mine producing oil, gas or other minerals shall be presumed to be holding under lease from the true owner of such land or mineral rights and the lessor, royalty owner, lessee or producer, or persons holding from them, shall be entitled to all oil, gas or other minerals so produced, or to the revenues or proceeds derived therefrom, unless and until a suit testing the title of the land or mineral rights embraced in said lease is filed in the district court of the ,parish wherein is located said real property. A duly recorded mineral lease from such last record owner shall be full and sufficient authority for any purchaser of oil, gas or other minerals produced by the well or mine aforesaid to make payment of the price of said products to any party in interest under said mineral lease, in the absence of the aforementioned suit to test title or of receipt, by such purchaser, of due notification by registered mail of its filing, and any payment so made shall fully protect the purchaser making the same; and so far as said purchaser is concerned as against all other parties, the producer of such oil, gas or other minerals shall be conclusively presumed to be the true and lawful owner thereof."

Section 3 of this act is as follows: "That notwithstanding the foregoing provisions, the purchaser, as respects any oil, gas or other minerals purchased prior to the date upon which this Act goes into effect, shall withhold payment of the purchase price until the lapse of sixty days from said effective date, or shall not be entitled to the protection said Act affords."

We had occasion to study and analyze this act in State ex rel. Boykin v. Hope Producing Company, 167 So. 506, 510, and therein said:

"We experience little difficulty in determining the legislative intent in adopting this act. It supplied a long-felt need, and in its operative effect will serve to prevent imposition upon and unjust discrimination against those whom it was intended to protect. The act establishes a rule of conduct for the protection of lessors, and their assign[ees] under oil and gas leases, and also a rule of security and safety for lessees and those holding under or purchasing from them. The right to resort to mandamus to compel payment of rentals, royalties, 'or other sums due under the specific terms of the lease, is limited to demands which embrace an amount or amounts definitely fixed in the contract. * * *

"The act was designed also to protect those persons whose rights arose from or are based upon contracts with the last record owner of the lands covered thereby, and to those who deal with or acquire from such persons. The last record owner is given the status of true owner, as related to all of said persons, and this status continues as to them until disturbed by filing of suit by an adverse claimant of the leased land or some real right concerning it. Under the act, royalty payments, definitely fixed in the lease, may not be legally withheld from those persons entitled to receive same, because of any defect in the title of the leased property or because of any threat or purpose on the part of third persons to involve the title or lease itself in litigation. Actual filing of suit by such third persons is necessary to stop the operative effect of the terms of the act."

■ Conditions precedent to a proper application of the protective provisions of this act are these: (a) That the lessee or other person from whom oil is purchased must trace his right to a lease or other contract with the last record owner holding title to the land or minerals sufficient in terms to transfer the res. In other words, a transfer or deed translative of property; and (b) that said mineral lease or other contract from such last record owner be duly registered in the parish wherein is located the land thereby affected.

■ Concurrence of these two conditions warrants and protects the purchaser in paying the price to the one from whom the oil has been purchased; and, under the express declarations of the act, no recourse may thereafter be had by any third person or adverse claimant against such buyer. A title to be translative of property need not be executed by the true owner. Civ. Code, art. 3485. It is only necessary to have such character that it be "a title which shall be legal, and sufficient to transfer the property" if executed by the true owner, and sufficient to form the basis of the prescription of ten years. Civ. Code, arts. 3479, 3484. It must be valid in point of form. The title deed to Best and Spurr meets all these requirements; but, it is argued, the absence of any written authority from the Ackerman Oil Company to its executive officers to execute the deed qualifies the act of sale to such extent that it is stripped of an indispensable attribute to its quality of being translative of

property. It is not intimated that these officers were not clothed with authority to act for the company. Their good faith is not challenged. Over eight years had elapsed when this suit was filed and the company, the only person to complain, had not raised its voice in protest of its officers' action. Such an act of sale is presumed to have been executed by authority and, for the purposes of said act, is translative of property in point of form.

It has been frequently held that, where one assumes the quality of agent and as such sells real estate, the deed executed by him, if otherwise valid, will serve as the basis of the prescription of ten years. Bowers v. Langston et al., 156 La. 188, 195, 100 So. 301. A long list of decisions supporting this principle is cited, among which is that of, Greening v. Natalie Oil Company, 152 La. 467, 93 So. 682, 685, wherein the court on rehearing quoted with approval the following statement in Bedford v. Urquhart, 8 La. 241: "A sale of immovable property, followed by tradition by a person styling himself the attorney in fact of the owner, but whose power of attorney is not produced, is only defective for want of the evidence of his authority, and not a nullity of form resulting from his legal incapacity."

■■ We do not think there is merit in the contention that the deed is not·translative of property because of the faulty expression of its consideration. It is presumed in a commutative contract that it is executed for a valid and adequate consideration, unless lack of such is negatived on its face. Read v. Hewitt, 120 La. 288, 45 So. 143.

"An agreement is not the less valid, though the cause be not expressed." Civ. Code, art. 1894.

■ The true cause or consideration of a contract may be shown by oral testimony, even though the expressed consideration be thereby contradicted. This rule is fixed in our jurisprudence by scores of decisions. Moore v. Pitre, 149 La. 910, 915, 90 So. 252.

We shall first discuss the constitutional question presented as though the oil in question were all delivered to defendant after the effective date of the 1934 act.

■ It is not disputed that as a rule the true owner of the soil has a right of action against the purchaser of oil from one who first reduced it to possession. The right of the true owner to hold the purchaser or converter of the oil for its market value is a legal one, created and continued

by lawful authority and, of course, may be modified, abridged, or entirely abolished by the same or a coequal power. Fugitive minerals, such as petroleum, belong to no one until reduced to possession. A lease to drill and explore therefor confers no real right. It has the status of a personal right. Gulf Refining Company of Louisiana v. Glassell et al., 186 La. 190, 171 So. 846. When reduced to possession, oil becomes personal property and the sale thereof with incident rights may be regulated and controlled as to scope and effect as the Legislature deems proper, within constitutional limitations. Act No. 64 of 1934 does not seek to relieve the producer of oil from liability to the true owner of the soil. It does have the purpose of confining such true owner's recourse to the producer. Instead of having recourse against the producer and his purchaser, the true owner's recourse is restricted to the producer alone. We can perceive of no good reason why the Legislature is not vested with ample power to enact such a law for the promotion of just and fair dealings between its citizens. No vested right of the owner is destroyed, nor is he denied thereby the equal protection of the law. He still has recourse against the person who acquired possession of and sold his property.

A promissory note prescribes in five years from its maturity. It may not be collected if the maker resists its enforcement because barred by the statute of limitations. He still owes the note, but the law has taken from the holder the right to enforce collection judicially. It could not be successfully contended that such a law has deprived the holder of his property without due process of law. The same may be said of all prescriptions which bar actions unless instituted within a definite period.

The owner of stolen property may recover its value from one who in good faith purchased it from the thief and thereafter destroyed, consumed, or disposed of it. We see no valid reason why the Legislature should not be within its proper power to enact a law that would protect the innocent purchaser from having to pay the owner the value of the stolen property and confine the recourse of such owner against the thief.

Real and personal property may be acquired by prescription as against the true owner, yet no one contends that laws recognizing this method of acquisition deprive the owner of his property without due process of law or deny to him the equal protection of the law.

The right to inherit property, save as to forced heirs (Constitution, section 16 of article 4), depends upon the legislative will. Hughes v. Murdock et al., 45 La.Ann. 935, 13 So. 182. An act of the Legislature abridging, modifying, or denying the right of inherison by heirs, other than forced ones, could not be successfully assailed on the ground that it deprived such heirs of property (an expectancy) without due process of law. Until such a right, as is the case with most rights, devolves upon the beneficiary, the power of the Legislature relative thereto is practically supreme.

The privilege of suing and of judicially compelling a debtor to repay what he is due to a complainant, even by the forced sale of his property, is conferred only by law. Without legal sanction such could not be done.

Article 1 of the Code of Practice defines an action to be, "the right given to every person, to claim judicially what is due or belongs to him." A personal action is defined by article 3 of the Code of Practice to be, "that by which a person proceeds against one who is personally bound towards him, either by a contract or by virtue of the law, in order to compel him to pay what he owes to him or to perform what he had promised."

Applying this rule to the case at bar, it is clearly seen that defendant's fears of having to pay twice for the oil purchased from plaintiff are wholly groundless. No third person may claim such price by virtue of any contract with defendant, and the right of such person to sue defendant for the oil's value has been withdrawn by legislative enactment.

Act No. 64 of 1934 became effective on August 1; 1934. Nearly all of the oil involved herein was delivered to defendant prior to that date. It is contended by defendant that, for the value of oil delivered prior to the going into effect of the act, a vested right and cause of action arose in favor of the true owner of such oil, if plaintiff were not such, and that such right and cause of action may not be divested or destroyed by legislative fiat. Unless the act by its own terms is saved from the force of this attack, defendant's position is well taken. A right of action to force indemnification for wrongs done to person or property is properly within the meaning of the

Constitution. The Legislature is destitute of power to annul or destroy it. Angle v. Chicago, St. P. M. & O. Railway Company, 151 U.S. 1, 14 S.Ct. 240, 38 L.Ed. 55.

We think the act itself may be construed to adequately take care of the issue tendered by this contention. Section 3 provides that as to oil purchased prior to the act's effective date, the purchaser "shall withhold payment of the purchase price until the lapse of sixty days from said effective date." If payment is made before the expiration of said effective date, then the purchaser is not protected by the act. While the act does not so declare, yet it is obvious that this sixty-day limitation was incorporated therein equally for the benefit of adverse claimants of the oil so sold and its purchaser. Claimants were allowed that period in which to assert their rights to the price against the purchaser and, in default of so doing within such time, they would thereafter have no standing in court to do so. This character of limitation upon a claimant's right to sue has the sanction of law and has been uniformly recognized by the courts as a competent exercise of legislative power. The only limitation thereon is as to the reasonableness of the time allowed to the adverse claimant to invoke judicial aid in vindication of his asserted rights. Defendant does not here contend that the limitation in the 1934 act is unreasonably brief. Anent this principle, the Supreme Court in Atchafalaya Land Company v. F. B. Williams Cypress Company, 146 La. 1047, 84 So. 351, as reflected from the syllabus, held that, "The test of validity of a statute of limitations under the doctrine that a statute cannot, under the guise of merely changing the remedy for asserting a right or for enforcing an obligation, immediately take away the right or materially impair the means of enforcing the obligation, is whether it allows a reasonable time for the assertion of the right or the enforcement of the obligation; the Legislature being primarily the judge of the reasonableness of the time allowed."

This case was carried to the United States Supreme Court and the judgment there affirmed. 258 U.S. 190, 42 S.Ct. 284, 66 L.Ed. 559.

This holding of the court is abundantly supported by textbooks on constitutional law. Black and Watson are quoted from in the opinion. They say that the question of the reasonableness of the limitation is one that addresses itself to the judgment of the Legislature, and that the courts "will not determine it unless the error is a palpable one." In the present case, nearly twelve months elapsed after the effective date of the act before suit was filed. No third person to that time claimed the money in controversy and we may safely assume no such suit has been filed to this time. Touching this point, the court in the Atchafalaya Land Company Case, said: "If the time that had already run has anything to do with the question, why should we say that six years in which to sue on a cause of action that had already run 22 years was not a reasonable time?" See, also, State ex rel. Richardson v. Recorder of Mortgages, 12 La.App. 62, 125 So. 473.

Plaintiff has taken the position that since defendant recognized his ownership of the oil and agreed to pay him for it originally, without qualification, it is now estopped to challenge such ownership and inequitably held both the thing and its price, especially so when no adverse claim has been made to the oil in whole or part. There may be merit in the plea of estoppel, but it is unnecessary to definitely pass on the issue thereby raised in view of the decision reached by us on the more important questions submitted for adjudication.

Plaintiff sued for attorney's fees for services rendered in the case. These were disallowed by the lower court. We think this action correct. No law is known to us that warrants recovery of such a fee in a case of this character. Counsel fee was disallowed by the lower court in Sam P. D. Coyle v. North Central Texas Oil Company, Incorporated, and the judgment therein rendered as a whole was affirmed by the Supreme Court. 187 La. 238, 174 So. 274. The facts of that case are analogous with the present one.

We are of the opinion that the lower court's judgment is correct. It is hereby affirmed, with costs.