MOORE, J.
A scrap metal salvage company purchased and crushed a 1991 pickup "auto hulk" from a seller who represented that he was the owner of the vehicle. The alleged true owner sued the seller and scrap company for damages in Monroe City Court alleging that the scrap company failed to require proof of ownership from the seller. After the suit languished for several years, the scrap company filed a petition for concursus seeking dismissal from the suit by admitting liability for purchasing the truck, but asserting that its liability was limited to the amount it paid the seller for the vehicle plus interest from the date of judicial demand-a total of $142.78-and seeking leave of court to deposit that amount in the court registry. After a contradictory hearing, the court granted the concursus petition and ruled that the defendant was a good faith purchaser liable to the plaintiff for only $142.78 that it had deposited in the court registry. The court dismissed the scrap company from the suit. The plaintiff filed this appeal alleging several assignments of error, including claims that the court erred in allowing the concursus proceeding, finding that the scrap metal company was a good faith purchaser, and dismissing the defendant from the suit.
For the following reasons, we reverse and remand for further proceedings.
FACTS
Leroy Crumpton filed a petition for damages on May 6, 2010, against Edward *1115 Smith and the Monroe Iron and Metal Company d/b/a Auto Shred of La. ("Auto Shred") alleging that Smith took possession of his 1991 Ford pickup truck and sold it for scrap metal to Auto Shred on May 8, 2009. Auto Shred, the petition alleged, is liable for damages because it purchased the truck from Smith without requiring him to show any proof of ownership.
Although Auto Shred was timely served, service of process was not made on Smith within 90 days of filing as required by law. Pursuant to Smith's exception, Crumpton's claim against Smith was dismissed without prejudice for untimely service. Several years later, on May 8, 2015, Crumpton filed an amended petition, again naming Smith and Auto Shred as defendants, but now adding a third defendant identified as Leonard Polk,[1] who Crumpton alleged took possession of the truck along with Smith, who sold the vehicle for scrap.
Smith answered, challenging Crumpton's account of the facts alleged in the amended petition. Smith argued that he had no intent to steal the vehicle, which had been abandoned for some time at Leonard Polk's residence, and had no intent to commit theft of the truck. He contends that Crumpton is largely responsible for the loss for his contributory negligence by abandoning the truck.
Lennard Russell filed a pro se answer identifying himself as the correct defendant incorrectly named Leonard Polk in the amended petition. Russell's answer to that petition provides a cogent factual account of this affair.
Russell stated that in late February 2009, Crumpton asked Russell if he could use his hoist to remove the motor from his truck and put another motor in it. He said Crumpton promised he would do the job within three days. Russell gave Crumpton permission to use the hoist and do the job at his house, but he said that he never agreed to allow him to store the truck on his property, and advised Crumpton to have the truck off his property within a week because the city was after him to clean up his property.
Russell stated that Crumpton never finished his work on the truck, and never came back to get it. Russell contacted him several times about removing the truck from his property. He said he did not know Crumpton personally, but he did not charge him to use the hoist, and denied ever agreeing to take possession or responsibility for the truck. In his final conversation with Crumpton, Russell told him that he was going to move the truck to the street if he did not come and get it by March 24. On March 23, Russell moved the truck to the street where he said it remained until April 14, 2009. On the latter date, he returned home from a doctor visit and saw that the truck was gone. He assumed that Crumpton had picked it up.
Crumpton alleged that he discovered his truck was gone from Russell's house on May 11, 2009. His account in the police report contradicts Russell's statement that the truck was moved from the street on April 14, 2009. Crumpton told Monroe Police Officer Donese Kitchen that the last time he saw the truck was on May 7, 2009, when it was parked in front of Russell's house at 2713 Jackson Street.
Crumpton described the truck to Officer Kitchen as a 1991 Ford F150 valued at $1,500. He said the reason the truck was at Russell's house was to put an engine in it and get it running, but when he returned to Russell's address on May 11, 2009, the vehicle was gone. He said he received a call from a friend at Auto Shred on the same day who told him that his truck was *1116 at Auto Shred. He went to Auto Shred and found that the truck had been crushed. He obtained a copy of the purchase receipt from Auto Shred with the signature of Edward Smith on it showing that Auto Shred purchased the truck from Smith on May 8, 2009. He gave the receipt to Officer Kitchen.
After Crumpton filed the amended petition, Auto Shred filed a petition for concursus, naming Crumpton, Smith, and Russell as defendants. It admitted or adopted Crumpton's allegations that Smith and Russell stole the truck, and Smith sold the truck to Auto Shred for scrap metal. Auto Shred admitted that it purchased for scrap an F-150 pickup truck from Smith, and alleged that the truck had no license plate, engine or gas tank.[2] It alleged that Smith signed a document stating that he was the owner of the truck, attached as Exhibit A. It further admitted liability pursuant to La. C.C.P. art. 4652,[3] and requested that the court grant leave for Auto Shred to deposit the amount it paid Smith, $132.00, plus legal interest from the date of judicial demand for a total of $142.78. Auto Shred averred that after such deposit, it was seeking a ruling from the court relieving it of any further liability.
Crumpton filed an answer denying the allegations by Auto Shred regarding a concursus proceeding. Neither Smith nor Russell filed an answer to the petition for concursus.
The trial court set a hearing date on a rule to show cause why the concursus petition should not be granted. The hearing was held on August 15, 2017, with counsel present for all represented parties, and Lennard Russell appearing pro se. No testimony was taken and only counsel for Auto Shred and Crumpton presented arguments. Counsel for Auto Shred submitted the sole item of evidence, the purchase receipt signed by Smith that Auto Shred had attached to its concursus petition as "Exhibit A," and is described by counsel as "the Affidavit that Edward Smith signed saying and attesting that he owned the car that he was selling for scrap metal."
Exhibit A is a multi-purpose printed form on 4 x 6 inch paper bearing at the top the company name "Auto Shred of Louisiana." Below is a printed column of short "check lines," with each line next to an item type being sold for scrap, e.g. appliances, tin, whole cars, mashed cars, motors, etc. Below this list is a date line, a signature line and additional space for comments. At the very bottom of the form is a printed declaration which reads:
I choose to be unloaded by Auto Shred of La. equipment and release them of any liability or damages to my equipment.
I also state that the said property has been paid for and is owned by me, free *1117 of any leins [sic] or encumbrances whatsoever and that I am duly authorized to sell same.
Exhibit A was dated "5-8-09" and (somewhat illegibly) signed but identified with a handwritten notation "Edward Smith," in the margin. A check mark was placed beside the blank for "whole cars." Additionally, a blank area of the form contained a handwritten description of the vehicle as "Maroon-white Ford-P.U. F-150 XLT Lariat." On the two "comment" lines a handwritten entry of two letters, possibly "H.A", and the following: "1FTdF15N5MNA15533," which is possibly the VIN. No testimony was taken regarding the document or its contents, nor was any other testimony or evidence submitted.
Auto Shred argued that it had complied with all the requirements for a concursus proceeding and it admitted its liability for the purchase, but contended that its liability was limited to the amount it paid as a good faith purchaser from Smith who claimed (by signing the form) that he owned the vehicle. Counsel further argued that Crumpton's petition had no allegations of intent or that Auto Shred knew the truck did not belong to Smith that would show it was a bad faith purchaser. Counsel argued that there is nothing in the law that entitles the plaintiff to recover from Auto Shred any more than the price it paid for the truck.
Crumpton argued that the instant case was not a proper situation for a concursus proceeding, which requires two or more competing claims for the same property or money or other pecuniary interests. The instant litigation involved a single plaintiff, Crumpton, who sued the three defendants for their involvement in the misappropriation of his truck.
Crumpton also argued that his petition for damages seeks more than the mere scrap metal price Auto Shred paid for the truck; he demanded the value of the lost truck, reimbursement for reasonable expenses and attorney fees. There was no evidence or argument presented regarding the value of the lost truck or any expenses Crumpton incurred.
Counsel for Edward Smith and Mr. Russell declined to participate in the argument, and the trial court took the case under advisement.
Subsequently, the trial court rendered judgment October 9, 2017, granting the concursus petition and ordering the clerk's office to tender $142.78 to Crumpton. It dismissed Auto Shred from the proceedings after the check was tendered. It also dismissed Auto Shred's exception of no cause of action.
In its reasons for judgment, the court concluded that "Auto Shred cannot be considered a bad faith purchaser since Edward Smith indicated that he owned the vehicle." Regarding Auto Shred's exception of no cause of action, the court denied the exception stating that the plaintiff had a cause of action against Auto Shred, but its damages would be limited to the purchase price Auto Shred paid for truck plus judicial interest, which it would receive as a result of the concursus judgment.
Crumpton filed this appeal.
DISCUSSION
Sale of Vehicles to Scrap Metal Purchasers
Louisiana has strict regulations governing the sale and disposal of motor vehicles for scrap which are found in Title 32 of the Revised Statutes. La. R.S. 32:717 concerns the sale of a "motor vehicle" as opposed to an "auto hulk" to a scrap metal processor. The statute requires, among other things, that any owner who sells a *1118 motor vehicle as scrap must assign a certificate of title to the purchaser and the purchaser must obtain a permit to dismantle or destroy the vehicle.[4] On the other hand, La. R.S. 32:718governs the sale of an "auto hulk"[5] as scrap to a scrap metal processor.[6] While the sale of a motor vehicle to a scrap processor requires the seller to assign a title issued from this state or another state, the sale of an "auto hulk" does not require the seller to assign a state-issued certificate of title. Paragraph A of the statute in effect in 2009 reads, in pertinent part:
[I]n lieu of a title, any owner who sells an auto hulk as scrap to be dismantled or processed for recycling shall provide the secondary metal processor ... with a signed and dated affidavit stating that he is the owner of the vehicle ... or has *1119 the right to sell or transfer the vehicle or part.
Although Paragraph B has been amended twice since 2009, its substance has changed little. In 2009, the statute quoted below did not require the items that are italicized, but otherwise required that the
metal processor ... shall maintain the signed and dated affidavit, along with the name and address of the person delivering, selling, or transferring the auto hulk, photographic or electronic copy of the seller's valid driver's license or a valid identification card issued by the seller's current state of residence, the tag number and state of issue of the vehicle delivering the auto hulk, and the vehicle identification number of the auto hulk. This information shall be kept in a registry or book or in electronic format for a period of two years. (Emphasis added).
In this instance, the record does not definitively indicate whether the truck sold to Auto Shred was a motor vehicle or auto hulk. Auto Shred stated in argument that the truck had no motor; however, Lennard Russell stated in his answer to the amended petition that Crumpton wanted to use his hoist to remove the motor from the truck and replace it. Of course, there is no testimony in this regard, and the affidavit submitted with Auto Shred's petition does not indicate whether the vehicle was an auto hulk.
Consursus Proceedings
Louisiana C.C.P. art. 4651 defines a concursus proceeding as "one in which two or more persons having competing or conflicting claims to money, property, or mortgages or privileges on property are impleaded and required to assert their respective claims contradictorily against all other parties to the proceeding." A concursus proceeding, in most cases, is subject to the rules applicable to an ordinary proceeding. La. C.C.P. art. 4662. Likewise, the procedure governing service of citation and the delays for answering are the same as in an ordinary proceeding. La. C.C.P. art. 4655. A concursus proceeding is simply a vehicle whereby one who admits owing money to others may deposit that money into the registry of the court, thereby relieving himself of the liability for the money so deposited. La. C.C.P. art. 4658. Collins v. Universal Cas. Co., et al., 2010-844 (La. App. 3 Cir. 2/2/11), 54 So.3d 1284.
By his first assignment of error, Crumpton argues that the court erred when it granted the petition for concursus, as there were no conflicting or competing claims between any of the defendants as required by La. C.C.P. art. 4651. Auto Shred, Crumpton argues, was not exposed to multiple claims and therefore it had no cause of action in the form of a concursus against Crumpton, Smith and Russell. Only Crumpton was asserting a claim for damages as a result of Auto Shred's purchase of the stolen vehicle. Lastly, Crumpton argues that a concursus proceeding is not a summary proceeding or a substitute for trial on the merits; it cannot be used to adjudicate claims raised in the main demand, citing Collins v. Universal Cas. Co., supra .
For its part, Auto Shred insists that the "competing interests" element required for a concursus proceeding are present. The plaintiff claims he owned the truck sold by Smith to Auto Shred, and Smith "signed an affidavit averring that he was the owner of the truck" referring to Exhibit A. Auto Shred also argued that its liability was limited to the purchase price it paid Smith for the truck on grounds that it was a good faith purchaser under *1120 La. C.C. art. 487.[7]
Based on these arguments alone and perhaps the unauthenticated "affidavit" signed by Smith, which would not meet the standards required for summary judgment under La. C.C.P. art. 967, the court adjudicated the merits of the petition for concursus on a summary basis. There was no testimony or evidence regarding the ownership of the truck, its value or any other damages.
In this instance, Auto Shred invoked a concursus proceeding based on the alleged competing claims of ownership of the truck, namely, Crumpton's allegation in his petition that he was the true owner of the truck and Smith's signature on Auto Shred's purchase affidavit that he was the owner of the truck. Presumably on these grounds, Auto Shred claims that Crumpton and Smith are each claiming the $142.78 that it deposited in the court registry.
In fact, Auto Shred's claim of competing parties for the deposited amount or of liability to multiple claimants in this case is a fiction. None of the parties in the main demand ever made a claim or cross claim against one another for the purchase price Auto Shred paid Smith for the truck. Smith's answer to the suit was a defense against liability on grounds that he did not intend to steal the truck and Crumpton negligently abandoned it. He alleged he thought the truck had been abandoned, took it to Auto Shred and sold it for its scrap metal value. His affirmative defense against any liability to Crumpton is that Crumpton's contributory negligence in abandoning the truck absolves him from liability. He makes no claim against Auto Shred or on money held in the court registry.
Crumpton, on the other hand, argues, as he did at the hearing, that he is not seeking the purchase amount Auto Shred paid Smith. He is seeking damages for the lost truck, which is presumably the actual value of the truck he lost. We conclude that Crumpton alone is making a claim against Auto Shred in this litigation for damages, and the court erred by allowing the concursus to be invoked.
We also conclude that the court erred by treating the petition for concursus as a summary proceeding by using the rule to show cause hearing as though it were a summary judgment proceeding.
Summary proceedings are those which are conducted with rapidity within the delays allowed by the court and without citation and the observance of all the formalities required in ordinary proceedings. La. C.C.P. art. 2591. Summary proceedings may be commenced by filing a contradictory motion or by a rule to show cause. La. C.C.P. art. 2593. First Federal Sav. & Loan Ass'n of New Iberia v. Stanley , 578 So.2d 220 (La. App. 3 Cir. 1991).
In Collins, supra, the court stated that the concursus statutes clearly indicate that a concursus proceeding is neither a summary proceeding nor a substitute for trial on the merits. It cannot be used for the adjudication of claims raised in the main demand. See also, Hollywood Casino Shreveport v. Shreveport Paddlewheels, LLC , 02-2134 (La. App. 4 Cir. 7/23/03), 853 So.2d 660, writ denied , 04-0098 (La. 3/19/04), 869 So.2d 857.
In this instance, the trial court signed an order (apparently supplied to the court with Auto Shred's petition for concursus) to grant Auto Shred leave of court to file *1121 the amount of $142.78 into the registry of the court and issue a rule to show cause ordering counsel for Crumpton and Smith, and Russell pro se, to appear on June 13, 2017, and show cause why the petition for concursus should not be granted and the amount deposited in the registry constitute complete satisfaction of any damages it may owe. This order began the summary proceedings in which the court decided Auto Shred's liability without taking the evidence necessary to adjudicate Crumpton's claim against Auto Shred.
We also note that a concursus proceeding does not serve to relieve the plaintiff in concursus of all further liability, but rather, it can relieve that party of liability only for the funds deposited. Clements v. Folse, 01-1970 (La. App. 1 Cir. 8/14/02), 830 So.2d 307, writ denied , 02-2328 (La. 11/15/02), 829 So.2d 437. Accordingly, the trial court erred when it released Auto Shred from liability and dismissed Auto Shred from the suit filed by Crumpton.
Crumpton argues in his second assignment of error that the trial court also erred by concluding that Auto Shred was not a bad faith purchaser, citing and also quoting part of La. C.C. art. 487, which reads:
For purposes of accession, a possessor is in good faith when he possesses by virtue of an act translative of ownership and does not know of any defects in his ownership. He ceases to be in good faith when these defects are made known to him or an action is instituted against him by the owner for recovery of the thing.
Crumpton maintains that since the court took no evidence, it could not make a determination whether Auto Shred was a good faith purchaser.
We have already determined that the trial court erred by granting the concursus proceeding and adjudicating Auto Shred's liability on a summary basis; however, we have some additional comments regarding the proceedings and Crumpton's other assignments.
The purchase affidavit attached as Exhibit A to Auto Shred's petition for concursus, if properly authenticated, appears to comply with the regulatory requirements in 2009 for sale of an auto hulk to a scrap processor. If the vehicle was indeed an auto hulk, Auto Shred was not required to check registration or request a title to the vehicle as Crumpton has argued. However, there is no testimony or evidence to indicate that the truck was definitively an auto hulk and not a motor vehicle, the latter requiring transfer of title.
Additionally, we make no determination whether the "good faith purchaser" doctrine applies to this case even if Auto Shred complied with the statutory scheme for the purchase of an auto hulk for scrap. The good faith purchaser doctrine is codified in La. C.C. arts. 517 through 534. Article 523 states that "[a]n acquirer of a corporeal movable is in good faith for purposes of this Chapter unless he knows, or should have known, that the transferor was not the owner." Comment (b) of the article is instructive, stating:
A transferee is in good faith when he ignores, without fault on his part, that the transferor is not the owner of the movable. If the acquirer has notice of facts that would put a reasonably prudent man on inquiry, he is under duty to investigate with the view of ascertaining the true situation. If he does not do so, he cannot claim that he is a purchaser in good faith.
La. C.C. art. 524 covers the remedy that our law provides to the true owner seeking *1122 to recover the movable from the purchaser in good faith:
The owner of a lost or stolen movable may recover it from a possessor who bought it in good faith at a public auction or from a merchant customarily selling similar things on reimbursing the purchase price.
The former owner of a lost, stolen, or abandoned movable that has been sold by authority of law may not recover it from the purchaser.
Because there were disputed facts and no trial evidence, we conclude that the trial court erred by making a determination that the good faith purchaser doctrine applied in this case.
We also note that the facts alleged in this case present a situation distinguishable from the traditional good faith doctrine case regarding damages because the movable has been destroyed and cannot be recovered by the true owner. We have found no jurisprudence or statute that states that the owner seeking damages for the destroyed movable is entitled only to the purchase price that the purchaser in good faith paid for the movable. In Muslow v. Louisiana Oil Refining Corp., 176 So. 686 (La. App. 2 Cir. 1937), however, the court stated that "[t]he owner of stolen property may recover its value from one who in good faith purchased it from the thief and thereafter destroyed, consumed, or disposed of it." Id. at 691. It may be that in most cases the value of the auto hulk is more or less the same as the scrap value; however, we can imagine that there are some cases involving highly sought after or vintage vehicle auto hulks that may have a greater market value than scrap. This simply underscores the necessity for a determination of damages based on evidence.
Finally, by his third assignment of error, Crumpton argues that the court erred by not having a hearing to determine damages. Citing C.C. art. 2315, he alleges that he is entitled to more damages than the $142.78 awarded in the concursus. Because we have previously determined that the trial court erred by not rendering a judgment based on a trial and evidence which would include evidence of damages, this assignment is moot.
CONCLUSION
For the foregoing reasons, we hold that the trial court erred by granting the petition for concursus filed by Auto Shred and deciding the merits of the case on a summary basis and without taking evidence by trial. Accordingly, we reverse the judgment of the trial court and remand this case for further proceedings in accordance with this opinion. Costs are to be paid by Auto Shred.
REVERSED AND REMANDED.

This person's name is actually Lennard Russell.

These alleged facts are important for determining whether the vehicle is an "auto hulk" as opposed to a "motor vehicle," for purposes of meeting state requirements regulating the sale of vehicles for scrap.

Art. 4652. Claimants who may be impleaded
Persons having competing or conflicting claims may be impleaded in a concursus proceeding even though the person against whom the claims are asserted denies liability in whole or in part to any or all of the claimants, and whether or not their claims, or the titles on which the claims depend, have a common origin, or are identical or independent of each other.
No claimant may be impleaded in a concursus proceeding whose claim has been prosecuted to judgment. No person claiming damages for wrongful death or for physical injuries may be impleaded in a concursus proceeding, except by a casualty insurer which admits liability for the full amount of the insurance coverage, and has deposited this sum into the registry of the court.

La. R.S. 32:717 read in 2009:
A. Any owner who sells a motor vehicle as scrap to be dismantled or destroyed shall assign a certificate of title thereto to the purchaser, whether the certificate was issued by the vehicle commissioner of this state or any other state, and the purchaser shall deliver the certificate of title to the commissioner with an application for a permit to dismantle such vehicle. The commissioner shall thereupon issue to the purchaser a permit to dismantle the vehicle, which shall authorize the purchaser to possess or transport the motor vehicle or to transfer ownership thereto by an endorsement upon the permit. A certificate of title shall not again be issued for the motor vehicle in the event it is scrapped, dismantled, or destroyed.
B. Notwithstanding Subsection A of this Section, the commissioner may issue, without the delivery of the certificate of title, a permit to dismantle any vehicle which is more than 10 years old and has not had its registration renewed in this state or any other state for a period of three years immediately prior to the application for a permit to dismantle the vehicle.

An "auto hulk" is a motor vehicle that is not self-propelled or capable of carrying persons or property on a public highway. La. Atty. Gen. Op. No. 11-0112, 2012 WL 3306965. Formerly, "auto hulk" was similarly defined in § 751, a definition section repealed by Acts 2006, No. 440, § 2. A motor vehicle is defined in La. R.S. 32:401.

La. R.S. 32:718, originally enacted by Acts 2008, No. 586, § 1, currently reads:
A. Notwithstanding any law to the contrary, in lieu of a title, any owner who sells an auto hulk as scrap to be dismantled or processed for recycling shall provide the secondary metal processor or licensed automotive dismantler and parts recycler with a signed and dated affidavit stating that he is the owner of the vehicle or part or has the right to sell or transfer the vehicle or part.
B. Every secondary metal processor or licensed automotive dismantler and parts recycler shall maintain the signed and dated affidavit, along with the name and address of the person delivering, selling, or transferring the auto hulk, photographic or electronic copy of the seller's valid driver's license or a valid identification card issued by the seller's current state of residence, the tag number and state of issue of the vehicle delivering the auto hulk, and the vehicle identification number of the auto hulk. This information shall be kept in a registry or book or in electronic format for a period of two years at the secondary metal processor's or the licensed automotive dismantler and parts recycler's place of business and shall be made available for inspection by any peace officer, law enforcement official, or office of motor vehicles official at any time during customary business hours.
C. Every secondary metal processor or licensed automotive dismantler and parts recycler shall submit an electronic report to the office of motor vehicles of the vehicle identification number of each auto hulk received from a seller. The report shall be in a form approved by the office of motor vehicles and shall be submitted within seventy-two hours of the purchase of the auto hulk.
D. The provisions of this Section are applicable to auto hulks in lieu of the provisions of R.S. 32:717 and 807.

This code article concerns the Right of Accession. The correct code articles are articles 517-525.