(58 South. 175.)

No. 18,770.

WESTERFIELD v. COHEN.

(January 2, 1912. On Rehearing, April 8, 1912.)

*(Syllabus by the Court.)*

On Rehearing.

1. VENDOR AND PURCHASER (§ 131*)—PERFORMANCE OF CONTRACT—TITLE OF VENDOR—PRESCRIPTIVE TITLE.

In the absence of special contract to the contrary, a purchaser may be compelled to accept a prescriptive title, which is not suggestive of any serious danger of judicial attack.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 247; Dec. Dig. § 131:*]

2. PRINCIPAL AND AGENT (§ 19*) — AUTHORITY OF AGENT—PRESUMPTION—LAPSE OF TIME.

After the lapse of 20 years, the authority of an agent, acting under a procuration which has never been denied, will be presumed.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 36; Dec. Dig. § 19.*]

3. LIMITATION OF ACTIONS (§ 44*)—LIMITATIONS APPLICABLE—ACTIONS RELATING TO REAL PROPERTY—PRESCRIPTION.

The want of power to appoint an agent to convey real estate is a defect dehors the title of a bona fide purchaser, and is curable by the prescription of 10 years acquirendi causa.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 220–232; Dec. Dig. § 44.*]

Provosty, J., dissenting.

Appeal from Civil District Court, Parish of Orleans; George H. Théard, Judge.

Action by William W. Westerfield against Nathan Cohen. From a judgment for plaintiff, defendant appeals. Affirmed.

Felix J. Dreyfous and A. D. Danziger, for appellant. Burt W. Henry and Sompayrac & Westerfield, for appellee.

PROVOSTY, J. This is a suit to compel acceptance of title to real estate. The property in question consists of four lots of ground in square 579, bounded by Soniat, Howard, Robert and Freret streets, and designated by the letters A, B, C, and D, as per survey made by Geo. D'Armas, civil engineer.

The plaintiff acquired the property at a sheriff's sale made in foreclosure proceedings against one Morris Wilson. It is to Morris Wilson's title that objection is made. Morris Wilson acquired in 1892 by a notarial act, wherein the vendor is described as follows:

"Charles W. Dale, a resident of this city, acting for the 'Old Folks Home' of the city of New Orleans, as per power of attorney hereunto annexed and forming part hereof."

And the property is said to be—

"the same property acquired by and for said Old Folks Home from Eugene Dupre, as per act passed before Robert J. Kerr, late notary of this city, on the 12th day of September, 1885."

The power of attorney annexed to the act reads, in part, as follows:

"March 15, 1892.

"State of Louisiana, Parish of Orleans.

"We, the undersigned, representing the Old Folks Home, namely, the Wesley, Union, First Street, Camp St., Camp Parapet, Laharpe, St. Matthew, Simpson, Mount Zion, Haven, and Sixth Street, Chapels of the Methodist Episcopal Church, as to the property which was purchased for said Old Folks Home represented by the Rev. Marcus Dale, namely, a square of ground and appurtenances in the Sixth district of New Orleans, No. 579, bounded by St. George, Long, Soniat, and Robert streets, comprising 22 lots of ground as per act before Robert J. Kerr, notary, on the 12th of September, 1885, and registered in the conveyance office in Book 123, folio 688, do hereby authorize and empower the said Reverend Marcus Dale to sell the said property for a sum not less than ——— dollars, and upon such terms and conditions as he may deem fit and of best advantage; to pay and settle all indebtedness of said property, or have the purchaser assume the same, and deduct it from the price. And hereby he is authorized to sign and execute all necessary deeds and documents, and to do and perform each and every thing in relation to said transfer as though he had been thereunto specially authorized; with full power of substitution and revocation; we hereby ratifying all that he shall lawfully do, or cause to be done, in the premises, in faith of which we hereto sign our names for various bodies we represent, having full authority and being thereunto specially authorized.

"[Original signed]    T. J. Johnson.
"John Qualls.
"Elijoh Clark.
"R. C. Barrow.
"Stephen Duncan.
"T. P. Jackson."

Going to the act before Robert J. Kerr, by which said property is here said to have been acquired for the Old Folks Home from Eugene Dupre, we find that the said act of sale recites that the sale is made—

"unto Reverend Marcus Dale herein representing and acting for and on behalf of the Wesley Union, First Street, Camp Parapet, Laharpe, St. Matthew, Simpson, Mount Zion, Haven and Sixth Street, Chapels of the Methodist Episcopal Church; the said Marcus Dale being specially empowered thereunto, as will appear by the annexed authority."

And that the act further recites that:

"This sale is made for the purpose and design of establishing a home and support for indigent members of Methodist churches among the colored people, known as the Old Folks Home."

And that the act further recites that the price of the sale is $550, whereof $100 has been paid cash, and that for the balance the purchaser—

"has furnished two notes each for $225, drawn and subscribed by him for the Old Folks Home, to the order of and indorsed by him for the Old Folks Home."

The "authority" referred to in said act as being "annexed" is as follows:

"New Orleans, Sept. 12, 1885.
"We, the undersigned, representing the Old Folks Home," authorize and empower the Reverend Marcus Dale to purchase certain property situated in the Sixth district of this city, designated as square No. 579, to make the cash payment, sign the notes for the credit payment, and execute the act of sale with special mortgage and vendor's lien and privilege.
"[Signed]
"Rev. Tennessee P. Jackson, Simpson Chapel.
"Rev. Ernest Lyon, 6th Street M. E. Ch.
"Rev. John Qualls, 1st Street M. E. Ch.
"James W. Hudson, Mt. Zion M. E. Church.
"Elijoh Clark, Laharpe M. E. Church.
"Stephen Duncan, Union Chapel M. E. Church.
"Z. T. Gayden, Thompson Chapel, M. E. Church.
"A. J. Ford, Pastor Clinton Str. M. E. Church.
"T. J. Johnson, of Camp Parapet."

At the date of this sale, September 12, 1885, the said Old Folks Home, for the benefit of which the purchase is said to have been made, was not yet incorporated. A notarial act of incorporation had been passed; but the act had not yet been approved by the district attorney, nor recorded. The act was approved by the district attorney on October 16, 1885, and was recorded on October 20, 1885. A corporation does not come into existence until its charter is approved by the district attorney and recorded. Rev. Stat. § 677; Field v. Cooks, 16 La. Ann. 153; Williams v. Hewitt, 47 La. Ann. 1076, 17 South. 496, 49 Am. St. Rep. 394.

The act of incorporation recites that, desiring to form a religious and charitable corporation under name of "Old Folks Home Association of New Orleans, La.," the following persons, namely:

"Marcus Dale, representing Wesley Chapel; Stephen Duncan, representing Union Chapel; Thomas J. Johnson, representing Parapet Chapel; Robert C. Barrow, representing St. Matthew Chapel; John Qualls, representing Winan Chapel; Tennessee Jackson, representing Simpson Chapel; Elijoh Clark, representing Laharpe Chapel; and William Murrel"

—appeared before the notary; and that:

"They agreed, covenanted and do covenant and agree to form themselves and such other persons who may become their associates, and their successors into a corporation for the object and purpose of the erection and building of homes for the aged and infirm members of their associations in this city and in this state at large and to create a fund which shall be applied to the carrying into execution of the aforesaid objects."

The act further recites that:

"Any Methodist church may unite with the association by making application to the board of managers and paying into the treasury," etc.

The act further recites:

"That the business and affairs of said corporation shall be managed and conducted by a board of managers to be composed of two members from each church herein represented of which one shall be president, one vice-president, one secretary and one treasurer."

And that:

"The minutes of all proceedings by the board of managers shall be kept by the secretary and certified by the president."

It is needless to consider whether, by the said purchase from Eugene Dupre, the title to said property vested in said corporation, for whose benefit the purchase is said to have been made, or in the several individuals who gave Marcus Dale the power of attorney to make the purchase, or in the individuals composing the congregations of the several chapels for which the givers of said power of attorney declared they were acting. Wherever the title then vested, it has never been divested. If it vested in the said corporation, there has never been any divestiture, because there has never been any action taken at any meeting of the board of managers of said corporation looking in that direction. If said title vested in the several persons who gave the power of attorney to Marcus Dale for making the purchase, only some, not all, of these persons, joined in giving the power of attorney to make the sale to Wilson. If said title vested in the several congregations, these congregations have never taken any steps towards an alienation.

The judgment appealed from is therefore set aside, and the suit is dismissed, at the plaintiff's cost.

### On Rehearing.

LAND, J. [1] A rehearing was granted in this case to consider the question whether a purchaser of real estate is bound to accept a title dependent upon prescription for its validity.

This question was answered in the affirmative by the court in Pattison v. Maloney, 38 La. Ann. 885, where it was conceded that the one-fourth interest of one of the former owners had not been divested.

In Johnson v. Carrere, 45 La. Ann. 847, 13 South. 195, the defendant was ordered to accept a title, the alleged defects of which the court held had been cured by prescription.

In Meibaum v. Brennan, 49 La. Ann. 580, 21 South. 853, it was held that the plaintiff had acquired a valid title by the prescription of 10 years, and that the defendant was bound to accept it. The case of Pattison v. Maloney, supra, was cited as in point.

There is nothing contrary to this doctrine in Beer v. Leonard, 40 La. Ann. 845, 5 South. 257, where the plaintiff had no title to one-half of the property which could serve as the basis of prescription.

In Lockhart v. Smith, 47 La. Ann. 121, 16 South. 660, there was no question of the prescription of 10 years, and the title tendered was bad. The plaintiff urged in aid of his title the prescription of three and five years; and the court said that, as between the parties to the suit, the rules of prescription were not applicable.

The result of the cases cited, supra, is that the defendant will be compelled to accept a title acquired by prescription, where the court is satisfied that such title is safe from successful judicial attack. It is the rule at the common law that:

"Where the vendor did not expressly contract for a good record title, a title depending on adverse possession is often so free from doubt that it may be forced upon the purchaser." 36 Cyc. 641.

The Civil Code of this state provides that titles to real estate may be acquired by the prescription of 10 and 30 years. If the conditions required by law are shown to have existed, a prescriptive title is as valid as a title from any other source.

On September 12, 1885, the square of ground, of which the lots in controversy form a part, was sold by Eugene Dupre unto the Reverend Marcus Dale, "representing and acting for and on behalf of the Wesley Union" and other chapels of the Methodist Church, as per procuration annexed to the

act of sale. The deed recited that the purchase was made—

"for the purpose and design of establishing a home and support for indigent members of the Methodist churches among the colored people, known as the 'Old Folks Home.'"

The power of attorney was signed by nine ministers, of as many different Methodist churches, representing the "Old Folks Home," and authorized the Reverend Marcus Dale to purchase the square, make cash payment, sign notes for credit payment, etc. Marcus Dale himself represented another church, called the "Wesley Union."

On the same day, seven ministers, representing seven of the churches named, and one layman signed an act of incorporation of "the Old Folks Home Association of New Orleans, La." The act was duly approved by the district attorney on September 16, 1885, and was duly recorded on October 20th of the same year. The powers of the corporation were vested in a board of managers, two from each of the churches represented, with power to sell, mortgage, hypothecate, etc., by a majority vote, and also with power to decrease the membership of the board.

On March 15, 1892, six of the same ministers, holding themselves out as representing the "Old Folks Home" and the ten churches, as to the property purchased in 1885 for said Home, represented by the Reverend Marcus Dale, executed a procuration, with powers of substitution, empowering the said Dale to sell the 22 lots, into which the square had been subdivided, upon such terms and conditions as he might deem fit and of the best advantage, and to pay and settle all the indebtedness of said property, or have the purchaser assume the same, etc.

On October 6, 1892, the Reverend Marcus Dale, appearing before a notary as the duly constituted agent of the Old Folks Home and president of its board of trustees, composed of the parties signing the procuration, declared that he appointed his son, Charles W. Dale, as his substitute for all the purposes set forth in the mandate.

On the same day, and before the same notary, Charles W. Dale, acting for the Old Folks Home, as per procuration, sold the whole square of ground to Morris Wilson for the price of $450, part cash and balance on terms of credit. The act, after describing the square by number, streets, etc., refers to it as the property acquired by and for said "Old Folks Home" from Eugene Dupre by notarial act of date September 12, 1885.

The deed of September 12, 1885, recited that the price was $550, of which $100 was paid in cash, and for the balance two notes were given, drawn and subscribed by Marcus Dale, "for the Old Folks Home, to the order of and indorsed by him for the Old Folks Home." On the same day, Marcus Dale and seven other ministers of the churches named in the deed signed an act incorporating the Old Folks Home Association. On the face of the deed of purchase, the title to the square was in the churches named therein, in trust for the establishment of the Old Folks Home. The churches in the transaction acted through their ministers, seven of whom incorporated the Old Folks Home. The procuration of March 18, 1892, was signed by six ministers, who were also incorporators of the Home, and Marcus Dale, the agent appointed by them, was also a minister and incorporator. The sale made to Wilson in October, 1892, has never been questioned by any of the churches or ministers connected with the purchase of the property in 1885.

There can be no question that Morris Wilson purchased in good faith, and such is the legal presumption. At the date of the sale, Wilson was in possession of the square under a contract made with the Old Folks Home Association in 1887, under which he had erected a dwelling house on the premises. The act of sale of 1892 refers to the buildings and improvements on the property.

Wilson occupied the house for 20 years, during which time no adverse claim to the property was set up by any one.

[2, 3] The act of sale by which Wilson acquired the square of ground and the mandate of Dale to convey the premises were in due form. Hence the title was in terms sufficient to transfer the property. After the lapse of 20 years, the authority of Dale as agent, which has never been denied, will be presumed. Johnson v. Carrere, 45 La. Ann. 847, 13 South. 195. The right of the six trustees to appoint Dale as their agent was at most a defect dehors the mandate and act of sale, which did not prevent Wilson from acquiring the property by the prescription of 10 years. Hall & Turner v. Mooring, 27 La. Ann. 596. Wilson appears to have acquired a good title by prescription; and there is no apparent danger that his title will be judicially assailed in the future.

We therefore conclude that the title tendered is not suggestive of any serious danger of litigation, and should be accepted by the defendant.

It is therefore ordered that our former decree herein be vacated, and that the judgment below be affirmed, at appellants' costs.

PROVOSTY, J., dissents.