DOMENGEAUX, Judge.
This is a products liability action. Plaintiff, Ramona Boutte Schoeffler, was injured when a .22 caliber bullet accidentally discharged, striking her in the leg. She and her husband, William Schoeffler,[1] instituted suit against Remington Arms, Inc., manufacturer of the bullet, and Cullum and Boren, distributor of same. From a judgment of dismissal plaintiff has appealed. We affirm.
Plaintiffs owned and operated a gun shop in the city of Lafayette, Louisiana, both having considerable experience in the field of firearms. They were in the habit of driving out to a certain piece of property near the Vermilion River, which they owned, each afternoon, to take target practice with .22 caliber firearms. On the afternoon of May 6, 1975, plaintiffs ventured to the Vermilion River property and were joined by 15-year-old Ricky Leblanc, the son of a friend. Mr. and Mrs. Schoeffler had in their possession on that afternoon two .22 caliber firearms, to-wit: A Ruger automatic pistol and a collapsible survival rifle.
A few days prior thereto Mrs. Schoeffler had purchased three boxes of Remington .22 caliber rimfire ammunition, each box containing 100 cartridges. On the day prior to the date in question plaintiffs had also been at the Vermilion River property firing the same two weapons. The only ammunition which they used was the above described Remington .22 caliber cartridges. Plaintiffs experienced a number of misfires with this ammunition in both weapons. On May 6, 1975, the following day, plaintiffs employed the above described ammunition exclusively, experiencing several additional misfires, again using both firearms.
Sometime hear dusk, the mosquitoes in the area became bothersome, and the parties decided to terminate their shooting ac *53 tivities. Mr. Schoeffler was firing the Rug-er automatic pistol at the time and testified that, on the last clip, he experienced misfires with the second and third cartridges and was forced to eject them manually. After firing his last shot Mr. Schoeffler pulled the trigger and hearing a click, assumed that the final cartridge had been fired. However, he failed to further examine the weapon to verify that assumption.
Mrs. Schoeffler then began to dismantle her survival rifle, and plaintiffs walked from the bank of the Vermilion River to their pickup truck which was parked only a few feet away. Mr. Schoeffler placed the pistol on the seat of the pickup, and both parties went around to the back of the truck to store the remainder of their gear in the camper portion thereof. Mrs. Schoeffler returned to the cab of the truck, opened the door, entering partially, when the Ruger pistol discharged, the bullet therefrom striking her in the leg. In a written statement given to investigating police officers, Mr. Schoeffler stated that he was also entering the truck at the time of discharge and that his hand had struck the weapon at the time of firing. However, this plaintiff later denied that he was in the truck at the time the pistol discharged.
Plaintiffs filed this suit contending that Mrs. Sehoeffler’s injury was caused by a defect in the ammunition which caused a “misfire”. Defendants denied any defect whatsoever in their product, alleged contributory negligence on behalf of plaintiffs and filed a reconventional demand against Mr. Schoeffler for contribution should they be adjudged liable. The trial judge found that the cartridge in question in fact misfired but that the subsequent discharge thereof could not have been caused by the shell itself. The district judge concluded that plaintiffs failed to prove by a preponderance of the evidence that the cartridge was defective and/or that their damages were caused by any defect thereof. He further found that the proximate cause of Mrs. Sehoeffler’s injuries was the negligence of her husband.
Three individuals were accepted by the court as experts in the field of firearms and related matters, and all testified in defendant’s behalf.
Jack Chisnall, a 36-year employee of Remington Arms Company, Inc., and currently supervisor of Product Service, provided the court with the following definitions:
“A misfire is a cartridge in which the primer has been struck, ignition does not take place, and the bullet or shot remains within the cartridge case.

A delayed fire is one whereby a person has attempted to fire a cartridge and for some reason the arm itself hung up and then the firing pin and hammer let go to a later date or time.

The knowledge and term hangfire is one whereby it might occur up to three-hundredths of a second, three-hundredths of a second.”
Richard A. Sahlin, a 35-year employee of Remington Arms Company, Inc., and currently chief processing engineer, testified that the normal time lag between the striking of the firing pin on the primer of a cartridge and the actual firing thereof is one and one-half to two milliseconds (thousandths of a second). He further stated that it was impossible to have a time lag of four to five seconds and that the longest he had ever experienced was 15 milliseconds.
The most eminently qualified expert who testified at trial was Col. Edward B. Cross-man, a nationally renowned writer and expert in the field of firearms and ammunition. Colonel Crossman defined the term “hang fire” as follows:
“. . . a delayed perceptual to the shooter during the time the firing pin strikes the primer, until the bullet or shot charge leaves the muzzle of the gun. In practical purposes this means, a delay of approximately 40 milliseconds.”
The following testimony was elicited from this expert:
*54 “Q. Now you have done extensive research into misfires, haven’t you? I mean hangfires?
A. Yes, sir.
Q. Communicated with experts around the world in ammunitions, haven’t you?
A. I talked to them, yes.
Q. And you have written at least one article on the phenomenon, haven’t you?
A. Yes, sir.
Q. And in your professional opinion, based on your years of experience and. all your research, is it possible with modern day ammunition, such as is involved in this case, to have a delay between the time the firing pin strikes the rim and the explosion of a shell, for 4, 5, or 6 seconds?
A. No, sir. Its impossible. Its impossible, it can’t happen.
Q. Tell the court what a misfire is?
A. Well, a misfire is failure of a cartridge to fire when the primer had been struck. It may come due to an ammunition fault, or its most proba-' bly due to a gun defect, a gun fault.
Q. But it’s where the pin strikes and it does not fire?
A. For some reason the primer does not fire.

Now with the modern ammunition such as is involved in this case, lead styphnate that was testified to by Mr. Sahlin, is it your opinion that the action time, with that ammunition, if it fires at all, has to be less than say 10 milliseconds? <©
Yes. >
There is no way it can be a second or two seconds, or three? <©
In my opinion no. >
Would you agree it was like breaking a piece of glass, it either breaks or it doesn’t break, but it doesn’t break real slow?
It’s like breaking a piece of wood.”
An analysis of the foregoing testimony supports the following conclusions. A “misfire” occurs when the cartridge primer is struck by the firing pin without subsequent ignition. The cartridge is, in effect, a “dud”. A “hang fire” takes place when there is a slight lag between the time the primer is struck and the powder ignites. This lag is restricted to a few fractions of a second. Finally, a “delayed fire” exists when the actual firing mechanism of the weapon itself fails to strike the cartridge primer at the proper time but may do so at any point thereafter. A delayed fire is the result of a mechanical defect in the weapon itself and not the ammunition.
Obviously plaintiffs’ theory of recovery is predicated upon the occurrence of a “hang fire”. However, the record indicates and the trial judge so found, that more than one minute elapsed from the time that Mr. Schoeffler attempted to fire the final round until the instant of the accidental discharge which injured Mrs. Schoeffler. All of the above quoted expert testimony indicates strongly that it is beyond the realm of physical possibility for a hang fire to occur after such a passage of time.
In the noteworthy decision of Weber v. Fidelity and Casuaity Insurance Company of New York, 259 La. 599, 250 So.2d 754 (1971), our Supreme Court stated:
“A manufacturer of a product which involved a risk of injury to the user is liable to any person, whether the purchaser or a third person, who without fault on his part, sustains an injury caused by a defect in the design, composition, or manufacturer of the article, if the injury might reasonably have been anticipated. However, the plaintiff claiming injury has the burden of proving that the product was defective, i. e., unreasonably dangerous to normal use, and that the plaintiff’s injuries were caused by reason of the defect.” (Citations omitted) (Emphasis added).
The trial judge concluded that the necessary causal link between the alleged manufacturing defect and plaintiff’s injuries had *55 not been established. Such is a factual finding, and after a careful review of the evidence as outlined above, we find no manifest error in his determination. See Canter v. Koehring Company, 283 So.2d 716 (La.1973).
Hence, finding defendants free of negligence, the allegations of plaintiffs’ contributory negligence are no longer material, and we do not address ourselves to that issue.
For the above and foregoing reasons the judgment of the district court is affirmed. Costs of this appeal are assessed against plaintiffs-appellants.

AFFIRMED.

. Mr. Schoeffler sued on behalf of the community for lost income and services (from Mrs. Schoeffler) and past, present and future medical expenses.