452 So.2d 1191 (1984)
Christopher M. MEEKS
v.
ROMEN PETROLEUM, INC.
No. 83 CA 0644.
Court of Appeal of Louisiana, First Circuit.
May 30, 1984.
Writ Denied September 28, 1984.
*1192 John C. Herbert, New Orleans, for plaintiff-appellee Christopher M. Meeks.
Ronald L. Menville, Sr., Houma, for defendant-appellant Romen Petroleum, Inc.
Before PONDER, WATKINS and CARTER, JJ.
PONDER, Judge.
In this suit for breach of contract, defendant appealed the judgment ordering it to pay plaintiff $46,600.00 in damages for failing to perform on a contract to buy ten royalty acres.
The issues are: (1) plaintiff's status as agent or vendor, in arranging the sale; (2) whether plaintiff timely presented defendant with merchantable title; (3) whether the contract was subject to any suspensive conditions other than approval of title; and (4) if so, whether plaintiff complied with the other suspensive conditions.
We affirm.
Plaintiff, an independent petroleum consultant and landman, approached defendant *1193 with a proposal to sell defendant up to 20 acres of Callicutt royalty[1] in Pointe Coupee Parish, which plaintiff did not own but which he could buy from the then owners. This was explained to defendant's employee. After some negotiation, defendant informed plaintiff that defendant would agree to purchase 10 royalty acres, at the price of $11,000.00 per acre, plus a six percent commission on the purchase price for plaintiff, and gave plaintiff written evidence of its intent to purchase.
Plaintiff then negotiated the purchase of the Callicutt royalty from the owners. The deeds transferring ownership to plaintiff were placed in a bank, to be released to plaintiff only after he paid a draft of $87,500.00. Plaintiff then executed a deed transferring ownership from himself to defendant and deposited it in the bank along with defendant's ten-day sight draft for $116,600.00, expressly conditioned upon proof of merchantable title.
At some point, the draft was extended past its original due date by agreement of plaintiff and defendant. On February 15, plaintiff presented defendant with a title opinion plus the curative documents deemed necessary to correct title. On the 18th, the draft was returned unpaid by the defendant. According to plaintiff, Menville, defendant's president, informed him that Romen just did not have the cash on hand to pay the draft. According to Menville, he refused to pay the draft because (1) plaintiff failed to provide merchantable title, and (2) plaintiff failed to provide certain promised technical data on the productivity of the Callicutt well. Plaintiff borrowed money to comply with his contract to purchase the Callicutt royalty and to pay the broker's commission on the sale. He eventually sold the royalty for $7,000.00 per acre. Plaintiff then successfully sued defendant for breach of contract for the amount of $46,600.00, representing the difference between the Romen contract price and the price at which the royalty was subsequently sold, plus the cost of the broker's commission.
WAS PLAINTIFF DEFENDANT'S AGENT?
Defendant contends that the trial court erred in finding that plaintiff was acting as an independent vendor rather than as defendant's agent. Both plaintiff and defendant's former employee testified that it was well known that plaintiff was acting as vendor. Experts testified that the procedure was often used in dealing in royalties, leases and other oil-related transactions. The facts do not support defendant's assertion that an agency relationship existed in this case.
WAS THERE MERCHANTABLE TITLE?
Defendant next contends that the trial court erred in finding that plaintiff timely presented proof of merchantable title to the Callicutt royalty. Defendant argues that whether title is merchantable must be determined solely from the public records. Because plaintiff was not record owner of the royalty at the time he attempted to sell it to Romen, defendant contends the title was unmerchantable and Romen was thus justified in refusing to pay the draft. Defendant argues alternatively that the title was not merchantable because defects in the chain of title were not cured in a timely fashion.
Our Supreme Court addressed the issue of merchantability in Young v. Stevens, 252 La. 69, 209 So.2d 25 (La.1967):
"Property has a merchantable title when it can be readily sold or mortgaged in the ordinary course of business by reasonable persons familiar with the facts and questions involved."
There is no requirement in law which mandates that title to real property be entirely of public record in order to be deemed *1194 merchantable, absent a contractual agreement expressly or by necessary implication calling for a perfect record title. Westerfield v. Cohen, 130 La. 533, 58 So. 175 (La.1912). One may contract to sell what one does not own, so long as one is able to deliver good and merchantable title when the time for delivery arrives. Radecker v. Walko Builders, Inc., 130 So.2d 684 (La. App. 4th Cir.1961). See also Caplan v. Airport Properties, Inc., 231 La. 1071, 93 So.2d 661 (La.1957).
Romen was furnished with a rough copy of a title opinion by a reputable attorney at plaintiff's request, several days prior to the draft's due date. The opinion recommended curative action be taken in three instances. The plaintiff obtained curative documents in satisfaction of the requirements and submitted them, along with the final title opinion, to Romen's office on February 15, the first due date. La.C.C. art. 2058. As of that date the draft had been extended. Defendant made no request for a supplemental title opinion.
The trial court apparently found the testimony of the plaintiff more credible than that of Mr. Menville, and accepted plaintiff's version of events. His determination was reasonable and we thus find no manifest error. Stern, defendant's employee, executed two letter agreements indicating Romen's agreement to purchase, upon plaintiff's request; plaintiff explained that he needed a guarantee prior to purchasing the royalty himself. At trial defendant presented no evidence of any adverse claims to the Callicutt royalty which might reasonable have led to litigation over the title, nor did it argue any defects in the title other than the fact that plaintiff was not record owner.
WAS PROVIDING TECHNICAL DATA A CONDITION OF THE CONTRACT?
Defendant contends that the contract of sale of the royalty was subject to a suspensive condition requiring delivery to Romen of technical data proving the productivity of the Callicutt well.
LSA-C.C. art. 2275 provides in pertinent part:
"Every transfer of immovable property must be in writing...."
LSA-C.C. art. 2276 further states:
"Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since."
These provisions prohibit the introduction of parol evidence to vary, alter or contradict the terms of a contract which is required to be in writing. Andrew Dev. Corp. v. West Esplanade Corp., 347 So.2d 210 (La.1977). Mineral rights, including royalties, are classified under the Mineral Code as incorporeal immovables and subject to codal articles respecting immovable property. Guy Scroggins, Inc. v. Emerald Exploration, 401 So.2d 680 (La.App. 3rd Cir.1981), writ denied 404 So.2d 1257 (1981).
While there are exceptions to the parol evidence rule, they are not applicable in this case. The written agreement is clear and unambiguous. The contract as written sets forth obligations of both parties. Defendant seeks to introduce evidence of an additional obligation on the part of plaintiff. Defendant's argument that the parol evidence is offered not to contradict the terms of the written contract but to prove that no contract ever came into existence at all has no merit.
Furthermore, the trial court made a determination of credibility which we see no reason to disturb. Plaintiff and Stern testified that there was no agreement that plaintiff provide more technical data; Menville and another testified to the contrary. Each side presented an expert witness to corroborate the reasonableness of its position. We find no manifest error in the trial court's determination.
This finding makes it unnecessary to determine whether any additional suspensive conditions were met.
For these reasons, the judgment is affirmed at appellant's costs.
AFFIRMED.
NOTES
[1] At that time, Callicutt royalty was considered "proven", i.e., a well had been drilled on the Callicutt tract, an area roughly 2300 acres in size, and although drilling had not yet been completed, there had been reports that the well would be productive. Specific information on the well's productivity, potential or actual, in the form of test results, completion reports or well logs, was unavailable to the general public.