567 So.2d 739 (1990)
Jessie E. PARKER, et ux., Appellees,
v.
Curtis G. MACHEN, et al., Appellants.
No. 21756-CA.
Court of Appeal of Louisiana, Second Circuit.
September 26, 1990.
*740 Richard Machen, Slidell, for appellants.
LeRoy Smith, Jr., Tallulah, for appellees.
Before NORRIS, LINDSAY and HIGHTOWER, JJ.
NORRIS, Judge.
The plaintiffs sued for judgment recognizing themselves as the sole owners of a tract of land they bought from the defendants. In the alternative, they sought restitution of the purchase price and attorney fees. From a judgment declaring plaintiffs the sole owners of the property and assessing attorney fees and costs, the defendants appeal. We affirm the parts of the judgment recognizing the plaintiffs' ownership, clearing the title and assessing costs but reverse the part that awards attorney fees.

Facts and procedural posture
Mr. and Mrs. Parker bought from Curtis Machen and his wife a tract of land in Madison Parish in October 1983. The sale was by warranty deed and the price was $39,100. At the closing, Curtis Machen was represented by his brother, Richard Machen, who is an attorney in Slidell; the Parkers paid him for title insurance in favor of the lender, Tallulah State Bank. Richard Machen indicated without exception that there were no title problems. According to Mrs. Parker, Curtis Machen mentioned at the closing that something might once have been wrong with the title but his brother Richard had cleared it up.
The Parkers got their loan from Tallulah State Bank but fell behind in payments. As a matter of convenience, they deeded the property to their CPA, Mr. May, in April 1987 for $41,301. The Parkers continued to pay the Tallulah State Bank note, *741 apparently through Mr. May as an intermediary. Both Mr. May and the Parkers were actively seeking a genuine purchaser.
They eventually found a prospective buyer, a Mr. Johnson, who hired attorney Michael Lancaster to research the title and render an opinion. Mr. Lancaster felt the title was not merchantable for the following reasons. The property was originally owned by W.J. Machen, who died in 1978; his heirs opened his succession and listed this property as an asset. Curtis Machen, the Parkers' vendor, was one of six legitimate children of W.J. Machen; Richard Machen was another. W.J. Machen was married only once, but after a divorce he lived in open concubinage for 25 years with a woman named Adela King. By this common-law union there were four illegitimate children. After W.J. Machen's death, Curtis Machen filed in the succession proceedings an affidavit of death and heirship that listed all the children, six legitimates and four duly acknowledged illegitimates; however, the judgment of possession itself placed only the legitimate children in possession of the succession assets. (The other legitimate heirs later sold their portions to Curtis, who was the Parkers' actual vendor.) The judgment of possession, dated December 14, 1982, came over two years after the decision of Succession of Brown, 388 So.2d 1151 (La.1980), which recognized the constitutional right of illegitimates to share in their parent's succession. Also filed in the succession proceeding was W.J. Machen's olographic will that gave a usufruct on the property to Adela King, but the judgment of possession omitted this too. Because the judgment of possession omitted the illegitimate heirs and ignored the usufruct, Mr. Lancaster found the title strongly suggestive of litigation and unmerchantable. Because of this opinion the prospective purchaser did not buy.
Mr. May reconveyed the land to the Parkers. Mrs. Parker testified that they attempted to get quit claim deeds from the illegitimate children but these refused. The Parkers brought this suit in January 1988 against Curtis Machen and his wife, the actual vendors; his four surviving legitimate siblings (including the attorney, Richard Machen); the six children of a predeceased legitimate brother; the four illegitimate siblings; and Adela King. The Parkers requested judgment declaring them the sole owners of the property and dissolving the usufruct in favor of Adela King. Alternatively, and only if their title could not be cleared, they prayed for a money judgment of $46,000, representing in effect restitution of the purchase price plus $7,000 spent on improvements, plus costs and attorney fees. The prayer for attorney fees was affixed only to the request for a money judgment.
Richard Machen represented most of the defendants. He filed an exception of no right of action based on LSA-R.S. 9:5630 (see below). He also attached a copy of an affidavit dated August 7, 1979, in which Adela King renounced her usufruct; this affidavit had never been filed in the succession record or the conveyance records. After a hearing in August 1988, the trial court overruled the exception.
The matter went to trial in March 1989. The Parkers and Curtis Machen testified to the facts outlined above. Richard Machen added that he never intended to divest his illegitimate brothers and sisters of their share of the property; he simply overlooked Succession of Brown, even though 99% of his practice is real estate work. He also thought his brother Curtis paid for the title insurance he provided to Tallulah State Bank, even though the settlement statement plainly showed otherwise.
The trial court found that when defendant Curtis Machen signed the affidavit of death and heirship, he knew about his illegitimate siblings; in fact, he had full knowledge of the title problems because he had attempted to get a loan from Southern National Bank but the bank refused, citing the illegitimates' claims. The court also found that defendant Richard Machen had received a fee from the Parkers for the latters' title insurance policy, and should have known of the title defects. The court agreed that the illegitimate heirs' claims against the Parkers had prescribed under R.S. 9:5630; it found, however, that the plaintiffs could not have known about Adela *742 King's affidavit, which was not disclosed until two months after suit was filed. Thus there was a cloud on the title when the plaintiffs filed suit and they were entitled to judgment against all defendants declaring the plaintiffs to be the rightful owners of the property.
The court further found that in transacting the sale, Curtis and Richard Machen had acted in bad faith by representing to the Parkers that the title was clear. Citing LSA-C.C. art. 2547 (redhibitory vices of the thing sold), the court assessed Curtis and Richard Machen, in solido, with attorney fees of $3,000.
Curtis and Richard Machen brought this suspensive appeal.

Discussion: No right of action
By their first assignment the Machens urge the trial court erred in overruling their exception of no right of action. The exception was based on LSA-R.S. 9:5630, which provides in part:
§ 5630. Actions by unrecognized successor against third persons
A. An action by a person who is a successor of a deceased person, and who has not been recognized as such in the judgment of possession rendered by a court of competent jurisdiction, to assert an interest in an immovable formerly owned by the deceased, against a third person who has acquired an interest in the immovable by onerous title from a person recognized as an heir or legatee in the judgment of possession, or his successors, is prescribed in two years from the date of the finality of the judgment of possession.
The Machens' position is that the Parkers acquired the immovable by onerous title from a recognized heir; more than two years had elapsed since the judgment of possession became final; under § 5630 the unrecognized heirs' action to assert an interest against the Parkers was barred; ergo the Parkers have no right to seek judgment to clear their title.
The essential function of the exception of no right of action is to challenge whether a remedy afforded by law can be invoked by a particular plaintiff; it relates specifically to the person of the plaintiff. Henry v. State, through DHHR, 435 So.2d 565 (La.App. 3d Cir.1983), writ denied 441 So.2d 750 (La.1983). Whether or not a defendant might be able to urge a defense has no bearing on the plaintiff's right or interest to seek the relief. Gustin v. Shows, 377 So.2d 1325 (La.App. 1st Cir. 1979).
The trial court held that § 5630 would defeat the unrecognized heirs' right of action against the third party purchaser but it would not affect that purchaser's right to seek judgment to quiet title. This is correct; § 5630 bars a petitory action by an unrecognized heir after a certain period of time. Smith v. Jones, 504 So.2d 570 (La.App. 3d Cir.1987), writ denied, 508 So.2d 66 (La.1987). The Parkers do not fall into the class of unrecognized heirs who lose the right to proceed under § 5630. Just because the defendants are unable to assert a claim against the Parkers' property does not mean the Parkers lack the right and interest to quiet their title. This assignment lacks merit.

Merchantability of title
By their second assignment the Machens urge the trial court erred in finding that the Parkers' title was unmerchantable; they argue the suit to quiet title was unnecessary and the judgment improper.
Louisiana jurisprudence still recognizes the action to quiet title. Walmsley v. Pan American Petr. Corp., 244 La. 513, 153 So.2d 375 (1963); Harrison v. Alombro, 341 So.2d 1165 (La.App. 1st Cir.1976), writ denied, 343 So.2d 1063 (La.1977). Under this jurisprudence, a person who claims to be the owner of an immovable may bring an action to confirm his title. Standard Homes, Inc. v. Prestridge, 193 So.2d 100 (La.App. 2d Cir.1966). The requirements of the action to quiet title are:
1. Claim of ownership;
2. Existence of clouds;
3. Description of property; and

*743 4. Prayer for cancellation of the clouds.

Harrison v. Alombro, supra.
The plaintiffs easily satisfied three of these elements of the action; the only issue now is whether they proved the existence of "clouds." The trial court, in holding that the title was "unmerchantable," specifically found that the omitted usufruct was a cloud on the title. Property has a merchantable title when it can be readily sold or mortgaged in the ordinary course of business by reasonable persons familiar with the facts and questions involved. Young v. Stevens, 252 La. 69, 209 So.2d 25 (1968); Meeks v. Romen Petr., Inc., 452 So.2d 1191 (La.App. 1st Cir.1984), writ denied, 457 So.2d 13 (La.1984). A title is unmerchantable when it is suggestive of litigation. Marsh v. Lorimer, 164 La. 175, 113 So. 808 (1927). True, the claims of these unrecognized heirs would be barred by R.S. 9:5630. However, this title chain reveals what appears to be a blatant omission of certain heirs' rights. On this basis, a reputable lawyer had termed the title "questionable" and refused to give a clear title opinion; he felt that other title lawyers in the area would reach the same conclusion. One loan and at least one prospective sale had fallen through because of these problems. The omitted heirs, when approached about an amicable solution, had proven intractable, and their attitude was suggestive of litigation. The trial court concluded that in this state of affairs the property could not be readily sold or mortgaged in the ordinary course of business by reasonable persons familiar with the facts. We certainly will not disturb the trial court's finding of a cloud on the title. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The relief granted was appropriate.
We would further note that the plaintiff is entitled to a declaratory judgment to resolve the issue of "ownership of immovable property or of a real right therein[.]" LSA-C.C.P. art. 3654. The action is available even to a plaintiff who, like the Parkers, is in possession. Liner v. Terrebonne Parish Sch. Bd., 519 So.2d 777 (La.App. 1st Cir.1987), writ denied, 521 So.2d 1173 (La.1988), cert. denied, 488 U.S. 827, 109 S.Ct. 79, 102 L.Ed.2d 55 (1988). The Parkers' action was closely akin to one for declaratory judgment. The instant judgment, understood as declarative of the ownership of the land, was appropriate under the broad relief contemplated by art. 3654.
This assignment lacks merit.

Attorney fees and costs
By their third assignment the Machens urge the trial court erred in awarding attorney fees and costs. The award was based on LSA-C.C. art. 2547, which provides:
Art. 2547. Fraud on the part of the seller; rights of the buyer
A declaration made by the seller, that the thing sold possesses some quality which he knows it does not possess, comes within the definition of fraud, and ought to be judged according to the rules laid down on the subject, under the title: Of Conventional Obligations.

It may, according to the circumstances, give rise to the redhibition, or to a reduction of price, and to damages, including reasonable attorneys' fees, in favor of the buyer.
The Machens argue that they disclosed all potential title problems to the Parkers at the closing; thus there were no hidden, redhibitory defects in the title.
As a general rule, attorney fees are not due and owing a successful litigant unless specifically provided for by contract or by statute. Frank L. Beier Radio v. Black Gold Marine, 449 So.2d 1014 (La. 1984), and citations therein; Evans v. Century Ready-Mix Corp., 446 So.2d 860 (La. App. 2d Cir.1984). In the instant case there was no contractual provision for attorney fees so the award can be justified only by an applicable statute.
The primary relief the plaintiffs sought, and ultimately received, was to clear their title by the cancellation of acts or documents that were clouds. The jurisprudence does not allow the successful party in such an action to recover attorney *744 fees. Benedict v. Lynch, 81 So.2d 91 (La. App. 2d Cir.1955). The statutes establishing the cause of action for petitory action and declaratory judgment likewise do not provide for attorney fees. LSA-C.C.P. arts. 1871-1883, 3651-3654. Moreover, the plaintiffs did not even pray for attorney fees as a part of their claim to quiet title. The trial court erred in awarding attorney fees in this action because they are not statutorily or jurisprudentially authorized.
The trial court erroneously based the award on art. 2547. The plaintiffs did not obtain a rescission of the sale or a reduction of purchase price based on the fraudulent concealment of redhibitory vices. This article will not support the award. We further question whether the plaintiffs even sought redhibition, as the main thrust of their petition is in warranty. Even a successful litigant in a warranty action is not entitled to attorney fees. LSA-C.C. art. 2506; Calvary Tabernacle v. Louisiana Central Bank, 393 So.2d 708 (La.1981); Miller v. Patterson, 240 So.2d 22 (La.App. 2d Cir.1970).
We have considered whether any other statutory provision might give rise to attorney fees in this case but we are unable to find any. We are therefore constrained to reverse this portion of the judgment.
The Machens also contest the assessment of costs. The general rule is that the party cast in judgment must pay costs; moreover, the trial court has great discretion in the assessment of costs. LSA-C. C.P. art. 1920; Free v. Franklin Guest Home, Inc., 463 So.2d 865 (La.App. 2d Cir. 1985), writs denied, 467 So.2d 535, 467 So.2d 536 (La.1985); Ditch v. Finkelstein, 399 So.2d 1216 (La.App. 1st Cir.1981). Here the trial court was free to consider that the Machens' conduct necessitated the litigation, particularly their failure to furnish quit claim deeds or to file the renunciation of usufruct until after the Parkers brought this suit. Imposing costs against the Machens was not an abuse of discretion.

Conclusion
For the reasons expressed, the judgment is affirmed in all respects except the imposition of attorney fees. That portion of the judgment (Paragraph 4) is reversed and deleted. Costs of this appeal are to be shared equally by appellants and appellees.
AFFIRMED IN PART AND REVERSED IN PART.