601 So.2d 330 (1992)
Jack Mickey O'BRIEN, Sr., Plaintiff-Appellee,
v.
REMINGTON ARMS COMPANY, INC., Defendant-Appellant.
No. 23553-CA.
Court of Appeal of Louisiana, Second Circuit.
May 13, 1992.
Writ Denied September 25, 1992.
*332 Theus, Grisham, Davis & Leigh by Charles H. Heck, Monroe, for defendant-appellant.
Johnson & Placke by Allan L. Placke, West Monroe, for plaintiff-appellee.
Before MARVIN, LINDSAY and VICTORY, JJ.
LINDSAY, Judge.
The defendant, Remington Arms Co., Inc., appeals from a trial court judgment finding that the plaintiff, Jack Mickey O'Brien, was injured when a shell, which had been defectively manufactured by Remington, exploded in his rifle. The plaintiff has answered the appeal, seeking attorney fees. We affirm the trial court judgment regarding the liability of the defendant. We amend to award attorney fees on appeal and remand for further proceedings to consider and assess reasonable attorney fees for services rendered before the appeal.

FACTS
On December 6, 1985, the plaintiff was injured when his 15-year-old deer rifle exploded. The rifle was a .308 BDL Model 742 Woodmaster, manufactured by Remington. During deer hunting season, the plaintiff's rifle had jammed and he took it to a gunsmith for repairs. Upon its return from the gunsmith, the plaintiff and his adult son took the rifle out to adjust the sights, in anticipation of going hunting the next day.
The plaintiff testified that he uses Remington shells, exclusively. On the day of the accident, the plaintiff removed an unopened box of Remington shells from the gun cabinet in his home. He went outside and attached a paper plate to a nearby tree to use as a target. The plaintiff then loaded the rifle with shells from the previously unopened box of ammunition. When the plaintiff attempted to fire the rifle, it exploded.
The plaintiff and his son testified that smoke came from the rifle and it made a sound like a loud thud, rather than the sharp cracking noise usually associated with normal firing. After the weapon was fired, the shell casing became fused to the barrel. The bullet was never found.
The explosion knocked the plaintiff backward several feet and he ultimately lost his balance and fell. The plaintiff was somewhat stunned by the explosion and sought medical attention. He received a blow to his shoulder and suffered lacerations to his face and right ear. The plaintiff claimed that the explosion aggravated and accelerated a preexisting ear problem and that he now suffers a hearing loss. He also contended that he suffers from tinnitus, or ringing in the ear, which causes loss of sleep and is not responsive to medication.
The plaintiff filed suit against Remington, alleging that the accident was caused by the defendant's defectively manufactured shell. The plaintiff contended that the shell was defective in that it was overloaded with gun powder and this high pressure load caused the explosion. In the alternative, the plaintiff alleged that if the shell was not defective, then the rifle, also *333 manufactured by the defendant, was defective. The plaintiff sought damages for medical expenses, pain and suffering, hearing loss and mental anguish.
Remington denied that the explosion was caused by a defective shell it manufactured. The defendant contended that the explosion might have been caused by an obstruction in the barrel of the rifle, but was more probably caused by a shell that some third party had reloaded with improper or excessive gun powder.
Following a trial on the merits, the trial court ruled in favor of the plaintiff. On April 15, 1991, judgment was signed and filed, ordering the defendant to pay general damages and medical expenses in the amount of $27,742.65.
In reasons for judgment, the court stated that the defendant had abandoned its defense that the explosion was caused by a barrel obstruction. Therefore, the issue before the court was whether the round of ammunition in the chamber of the rifle at the time of the explosion was a reload or a defective factory loaded round. The court found that the explosion was caused by a defective factory loaded round. Accordingly, the court found Remington to be strictly liable and 100 percent responsible for any and all damages suffered by the plaintiff.
As to damages, the trial court found that, at the very least, this explosion accelerated or aggravated plaintiff's preexisting ear problem. The court noted that the plaintiff had dull pain in the ear, tinnitus and high frequency hearing loss. He also suffered bruises and lacerations on his face. The court awarded $2,742.65 for medical expenses and $25,000 in general damages.
On appeal, Remington essentially argues that the trial court erred in finding that the round which caused the explosion was manufactured by Remington. Remington also contends that the court erred in rejecting the testimony of its experts as biased because they were defendant's employees.
Remington alternatively contends that the $25,000 general damage award is excessively high and that any award granted to the plaintiff should be reduced by his comparative fault.
The plaintiff answered the appeal, claiming entitlement to attorney fees.

SUFFICIENCY OF THE EVIDENCE
Remington contends that the trial court was manifestly erroneous in finding that the plaintiff proved that the explosion was caused by a round of ammunition defectively manufactured by Remington. Remington argues that the explosion was probably caused by the firing of a high pressure round reloaded by an unknown third party. The defendant further contends that there was some possibility that the explosion could have been caused by a barrel obstruction. Because the trial court found plaintiff and his witnesses credible, we find Remington's arguments are meritless.
The plaintiff's accident occurred in 1985. His suit against the defendant, essentially asserting a products liability claim, alleges that he was injured either by defectively manufactured ammunition or a defectively manufactured firearm. Because the plaintiff's accident occurred before September 1, 1988, the effective date of the Louisiana Products Liability Act, contained in LSA-R.S. 9:2800.51 et seq, prior products liability law is applicable to this case. Berry v. Commercial Union Insurance Company, 565 So.2d 487 (La.App. 2d Cir.1990), writ denied 569 So.2d 959 (La.1990).
The prior law, applicable to the facts of this case, provides that a product is unreasonably dangerous in construction or composition if, at the time it leaves the control of its manufacturer, it contains an unintended abnormality or condition which makes the product more dangerous than it was designed to be. Halphen v. Johns-Manville Sales Corporation, 484 So.2d 110 (La.1986). A manufacturer or supplier who sells a product containing a construction or composition flaw is subject to liability without proof that there is any negligence on its part in creating or failing to discover the flaw. Halphen v. Johns-Manville, supra.
*334 A manufacturer of a product which poses a risk of injury to the user is liable to any person, whether the purchaser or a third person, who without fault on his part, sustains an injury caused by a defect in design, composition or manufacture of the article, if the injury might have been reasonably anticipated. However, the plaintiff claiming injury has the burden of proving that the product is defective, i.e., unreasonably dangerous to normal use, and that the plaintiff's injuries were caused by reason of the defect. Weber v. Fidelity and Casualty Insurance Company of New York, 259 La. 599, 250 So.2d 754 (1971); Schoeffler v. Remington Arms, Inc., 339 So.2d 52 (La.App. 3d Cir.1976).
The plaintiff's burden is to prove causation by a preponderance of the evidence. This burden may be met by direct or by circumstantial evidence. Weber v. Fidelity and Casualty Insurance of New York, supra.
To recover in a products liability case, the plaintiff must prove that the harm resulted from the condition of the product, that the condition made the product unreasonably dangerous to normal use and that the condition existed at the time the product left the manufacturer's control. Watson v. C.R. Bard, Inc., 557 So.2d 739 (La.App. 2d Cir.1990), writ denied 563 So.2d 880 (La.1990).
The manufacturer is presumed to know the vices in the things he makes whether or not he has actual knowledge of them, and once the product is proven defective by reason of its hazard to normal use, the plaintiff need not prove any particular negligence by the manufacturer in its manufacturing or processing. Watson v. Bard, supra.
A court of appeal may not set aside a finding of fact by a trial court or jury in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989); Lirette v. State Farm Insurance Company, 563 So.2d 850 (La.1990); Succession of Causey v. Causey, 569 So.2d 665 (La.App. 2d Cir.1990); Potvin v. Wright's Sound Gallery, Inc., 568 So.2d 623 (La.App. 2d Cir.1990).
In the instant case, the trial court evaluated all the testimony and evidence presented at trial and found that the plaintiff had shown by a preponderance of the evidence that the accident was caused by a defective round of ammunition manufactured by Remington. After reviewing the testimony and evidence, we find that the trial court was not clearly wrong in its ruling.
Remington first contends that the explosion may have been caused by a barrel obstruction. The defendant argues that the plaintiff had taken the rifle to a gunsmith who had made repairs and then test fired it. Remington asserts that because the plaintiff testified that he did not check the barrel of the rifle before he attempted to fire it, there is a possibility that some object could have remained in the gun barrel after test firing, causing an obstruction. However, at trial, one of Remington's experts, Mr. Edwin F. Sienkiewicz, testified that he had ruled out this possibility because the gunsmith who made the repairs stated that he had fired the rifle several times and all rounds fired and the shells were properly ejected. Mr. Sienkiewicz also said that it would be highly unusual to have such an obstruction in the barrel of the gun.
Remington's primary argument is that the explosion was caused by a high pressure reload. It is contended that plaintiff somehow obtained a high pressure reloaded round, not manufactured by Remington, and that the reloaded round caused the explosion. Remington argues that the plaintiff was a member of a hunting club and that there is a distinct possibility that, with several hunters using the same camp, the plaintiff may have inadvertently commingled loose ammunition with that of some other hunter who was a reloader, and *335 thus unwittingly picked up and used a reloaded shell which subsequently exploded.
Remington contends that several factors support the view that the explosion was caused by a reloaded round. When Remington conducted its investigation into possible causes of the accident, an employee loaded a .308 cartridge to its maximum capacity with the powder normally used to manufacture .308 ammunition. The employee then seated a bullet in the cartridge and fired the round. The round fired normally and did not damage the rifle. Remington also points out that after the accident, significant effort was required to remove the damaged cartridge from the chamber of the weapon where it was lodged. Remington's experts opined that the fact that the cartridge was jammed in the rifle is indicative of a high pressure reload.
Remington's experts also made an examination of the failed cartridge and compared it with other cartridges from known factory produced ammunition. Remington contends that three factors indicate that the cartridge in question was a reload, i.e., the failed cartridge had different coloration, there was an unusual amount of residue in the neck of the cartridge, and the neck of the cartridge lacked a customary burr or lip.
The evidence revealed that in manufacturing ammunition, the cartridges undergo a process called annealing whereby the neck of the cartridge is treated in a sulphuric acid pickling process to make it pliable and elastic enough for the bullet to be seated. The cartridge is made of brass and the annealing process removes the zinc and leaves copper, resulting in a pink color around the neck of the cartridge. The defendant contends that the cartridge that failed in the plaintiff's rifle did not have this pink coloration.
Remington's experts also testified that the neck of the plaintiff's cartridge had more black residue than the necks of cartridges from factory loaded rounds that had been fired only once.
On appeal, Remington also claimed that a burr or lip that is customarily present in factory loaded ammunition was absent from the cartridge in this case. According to the defendant, in the manufacturing process, the cartridge is trimmed, leaving a burr or lip around the neck of the cartridge. This burr or lip erodes with reloading. Remington sought to show that the cartridge which failed in the plaintiff's gun lacked this customary burr or lip.
To the contrary, the plaintiff testified that he never reloaded ammunition and that he used Remington ammunition exclusively. These facts were corroborated by the plaintiff's wife and son. The plaintiff also testified that he kept several boxes of ammunition at his camp and two or three boxes at his home. He testified that on the date of the explosion, he took an unopened box of ammunition from his gun cabinet at his home and loaded the rifle with several rounds of ammunition from the box.
Following the accident, the plaintiff sent the box of ammunition and the rifle to Remington for examination. The plaintiff testified that a Remington representative, Roger Potter, told him that the explosion was caused either by a patch in the barrel of the gun or by too much powder in the cartridge.
At trial, John T. Butters, testified as an expert on behalf of the plaintiff and asserted that the explosion was probably caused by a high pressure failure of the shell. The trial court gave little weight to Mr. Butters' testimony as a whole because of his lack of formal experience with firearms and ammunition. However, Mr. Butters' opinion as to the probable cause of the explosion was not disputed by the defendant's experts.
The trial court stated in written reasons for judgment that it found that the plaintiff, his wife and son were "extremely" credible witnesses. In accepting the plaintiff's testimony, the trial court essentially concluded that the plaintiff did not come into possession of a reloaded cartridge.
Further, the trial court was not persuaded by the explanation for the explosion given by the defendant's experts. The court found that the discoloration on the *336 cartridge could have been caused by repeated handling after the explosion or by heat from the explosion. The trial court found there was no unusual amount of residue in the neck of the cartridge. The court further noted that Remington's experts explained that the burr or lip on the neck of the cartridge varies depending upon the kind of cutter used at the plant and the consistency of the burr cannot be maintained. The fact that the burr or lip was not prominent on the failed cartridge was not necessarily indicative of a reloaded shell, according to the trial court.
Additionally, the trial court noted that the plaintiff's cartridge revealed no scratch marks which would be expected on a reloaded cartridge.
The trial court also found it significant that the defendant failed to perform a spectrographic analysis on the plaintiff's cartridge and the other cartridges in the plaintiff's box of Remington ammunition. This analysis would have indicated whether the exploded round was from the same box of ammunition.
In this case, the trial court evaluated the evidence and testimony and made reasonable evaluations of credibility and reasonable inferences of fact. Based upon our review of the record, we find no error in the trial court's acceptance of the testimony of the plaintiff and his witness, or in the trial court's conclusion that the round which exploded in the plaintiff's rifle was a defectively manufactured, factory produced round. We cannot say the trial court's conclusions are manifestly erroneous or clearly wrong. Therefore, we affirm.

EXPERT TESTIMONY
Remington contends that the trial court erred in rejecting the testimony of its expert witnesses on the basis of bias because the experts were employees of Remington.
The decision as to whether a person is qualified as an expert is within the sound discretion of the trial judge. The fact that a witness is a party or an employee of a party does not preclude his qualification as an expert because the potential bias of the witness may be explored on cross-examination. Ealy v. Bill Allen Dodge, Inc., 466 So.2d 52 (La.App. 2d Cir.1985); Harrington v. Velinsky, 567 So.2d 148 (La.App. 2d Cir.1990). The determination of credibility is a function allocated to the finder of fact and where these determinations are not found to be clearly in error, they are to be left undisturbed. Benton v. Shelter Mutual Insurance Company, 550 So.2d 832 (La. App. 2d Cir.1989).
In this case, the trial court did accept the defendant's witnesses as experts in the fields in which they were tendered. However, the court considered the fact they were employed by Remington in determining the weight to be given their testimony. The employment relationship between the experts and the defendant was a factor which the trial court could consider in weighing their testimony. This action by the trial court was not clearly erroneous.

DAMAGES
Remington contends that the trial court's general damage award of $25,000 is excessive. Remington argues that even though the plaintiff suffered minor injuries and has tinnitus or permanent ringing in his ears, the latter condition is largely attributable to the plaintiff's employment around loud machinery and the fact that he is aging. Remington contends a proper general damage award in this case would be $5,000. We find no abuse of discretion.
Before a trial court award for damages can be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the case. A damage award should not be disturbed by a reviewing court absent a showing of clear abuse of the discretion vested in the trial court. It is only after an articulated analysis of the facts discloses an abuse of discretion that resort to prior awards in similar cases is proper. Reck v. Stevens, 373 So.2d 498 (La.1979); Higginbotham v. Ouachita Parish Police Jury, 513 So.2d 537 (La.App. 2d Cir.1987).
*337 The appropriate procedure for testing whether a trier of fact has abused its discretion by making an excessive award is to determine whether the award can be supported under the interpretation of the evidence most favorable to the plaintiff which reasonably could have been made by the fact finder. Higginbotham v. Ouachita Parish Police Jury, supra.
Under the facts of this case, a general damage award of $25,000 is not excessive. As a result of the explosion, the plaintiff suffered lacerations to his face and ear and sought medical treatment. The plaintiff's inner ear was very red following the accident and the plaintiff developed tinnitus, or ringing in the ear, which did not resolve itself and is now a permanent condition.
The tinnitus interferes with the plaintiff's sleep and his family testified that he is now much more nervous than he was prior to the accident.
The plaintiff acknowledged that he works around loud machinery and did have some hearing problems prior to the accident. However, following the accident, the hearing loss has become worse.
Dr. Lawrence J. Danna, an ear, nose and throat specialist, testified by deposition that the plaintiff had a decrease in hearing in his right ear and complained of tinnitus which could be treated only with medication to aid the plaintiff in sleeping.
Dr. David Rene Dugas, also an ear, nose and throat specialist, testified by deposition that the plaintiff's tinnitus was probably caused by the gun blast, that the condition was permanent and would probably worsen as the plaintiff ages. He further testified that the plaintiff suffered some hearing loss which would also worsen with age.
The plaintiff's son, who works with the plaintiff, testified that after the gun blast, the plaintiff was sometimes unable to hear his telephone ringing at work.
Under these facts, we do not find that the trial court abused its discretion.

COMPARATIVE FAULT
In its specifications of error, Remington claimed, in the alternative, that if the trial court's finding against the defendant is upheld, then the plaintiff's recovery of damages should be reduced by his degree of comparative fault. Remington did not argue this issue in its brief. We consider the issue abandoned. URCA 2-12.4; Stephens v. State, Through Department of Transportation, 440 So.2d 920 (La.App. 2d Cir.1983), writ denied 443 So.2d 1119 (La. 1984).

ATTORNEY FEES
The plaintiff answered the appeal and asserted that, as a successful litigant in a products liability case, decided under the pre-1988 law applicable before the effective date of the Louisiana Products Liability Law (LSA-R.S. 9:2800.51, et seq.), he is entitled to reasonable attorney fees for the trial of the case. He also argues that he is entitled to an additional attorney fee award for this appeal. The plaintiff claims that the trial court erred in failing to award attorney fees. We agree, finding that plaintiff is entitled to an award of attorney fees.
As a general rule, attorney fees may not be awarded a successful litigant unless specifically provided for by contract or statute. Parker v. Machen, 567 So.2d 739 (La.App. 2d Cir.1990).
However, LSA-C.C. Art. 2545 provides:
The seller, who knows the vice of the thing he sells and omits to declare it, besides restitution of price and repayment of the expenses, including reasonable attorneys' fees, is answerable to the buyer in damages.
The jurisprudence provides that this article allows for the recovery of attorney fees by the successful plaintiff in a products liability case who has purchased, and been injured by, a defective product. In Philippe v. Browning Arms Co., 375 So.2d 151 (La.App. 2d Cir.1979), a plaintiff successfully sued to recover for personal injuries caused by a defectively manufactured firearm. On appeal, the plaintiff answered, seeking attorney fees under LSA-C.C. *338 Art. 2545. This court found that even though the plaintiff seemed to originally bring a negligence claim, our law operates on fact pleading, not theory of the case, and because the plaintiff's case concerned a claim for damages caused by a defectively manufactured product which he had purchased, the plaintiff was entitled to attorney fees under LSA-C.C. Art. 2545.
On original hearing, the Louisiana Supreme Court reversed, but on rehearing, the Supreme Court affirmed the appellate court decision. Philippe v. Browning Arms Co., 395 So.2d 310 (La.1981). The court found that there is no compelling reason to require a person injured by a defective product which he has purchased to proceed either in contract or in tort. The manufacturer's act of delivery of a defective thing, when he has knowledge of the defect, gives rise to delictual as well as contractual liability. A manufacturer is presumed to know the vices in the things he makes, whether or not he has actual knowledge of them. Watson v. Bard, supra.
The court then concluded that the right and extent of recovery by the purchaser of a thing against the seller or manufacturer is governed by the code articles providing for responsibility in the seller-purchaser relationship, as applied through LSA-C.C. Art. 2315. Because LSA-C.C. Art. 2545 clearly provides for recovery of damages and reasonable attorney fees, the court held that the appellate court correctly made such an award.
Under the reasoning of Philippe, supra, the plaintiff is entitled to attorney fees. A reasonable attorney fee is determined by consideration of many factors, such as the time and labor required, the local customary fee for similar legal services, the amount involved, the results obtained and the experience of the attorney performing the services. Brouillette v. Fireman's Fund Insurance Co., 563 So.2d 1343 (La. App. 3d Cir.1990).
This court can evaluate the work of plaintiff's counsel and make an award of attorney fees for work at the appellate level. We find that a reasonable attorney fee award for this appeal is $1000. However, we believe that the trial judge is in a better position to evaluate the factors set forth above in determining a reasonable attorney fee for services performed in the trial court. Therefore, we remand the case to the trial court for a further hearing regarding the amount of attorney fees to be awarded for services rendered in the court below.

CONCLUSION
For the reasons stated above, we affirm the awards in the trial court judgment. We amend the judgment to award plaintiff $1000 in attorney fees for the appeal of this case.
Having determined that the plaintiff is entitled to reasonable attorney fees for services rendered in the trial court, we remand the case to the trial court for further proceedings in accord with this opinion. Costs are assessed to defendant.
AFFIRMED IN PART; REMANDED FOR FURTHER PROCEEDINGS.
VICTORY, Judge dissenting.
The evidence in this case is overwhelming that the seven year old .308 cartridge which failed was badly overloaded, producing pressure of 120,000-130,000 PSI, whereas a normal factory load produces about 50,000 PSI. Remington has shown beyond any serious doubt that it could not have been responsible for overloading the shell at the factory since completely filling up the cartridge with the powder used by Remington for .308 shells would not have resulted in cartridge failure, or damage to the plaintiff's gun.